## BANK *v.* CARTER.

## (*Nashville.* December 17, 1889.)

1. JURISDICTION. *Over non-resident. Publication.*

   Courts of Law cannot entertain suit against a non-resident for a personal demand upon publication alone, without attachment or other impounding of his property situated within the jurisdiction of the Court.

   Cases cited and distinguished: Taylor *v.* Roundtree, 15 Lea, 725; Kyle *v.* Phillips, 6 Bax., 43 ; Walker *v.* Cottrell, 6 Bax., 257.

2. SAME. *Same. Service of process on co-defendant.*

   Want of jurisdiction over the non-resident is not, in such case, cured by the fact that a co-defendant, jointly sued, but severally liable for the demand, was duly served with process.

3. NEGOTIABLE PAPER. *Indorsement of check by payee.*

   The payee of a bank check is liable upon his indorsement, after it has been duly presented to the drawee and protested for non-payment, although the indorsee or holder, before accepting it, obtained the assurance of the drawee that the check was good and would be paid.

   Cases cited: Bank *v.* Merritt, 7 Heis., 190; Andrews *v.* Bank, 9 Heis., 211.; Schoolfield *v.* Moon. 9 Heis., 171 ; 10 Wall., 152, 647.

---

### FROM SUMNER.

---

Appeal in error from Circuit Court of Sumner County.   A. H. MUNFORD, J.

---

Bank *v.* Carter.

---

S. F. WILSON for Plaintiff.

J. J. TURNER, C. R. HEAD, and G. W. BODDIE for Defendants.

FOLKES, J.　The plaintiff, an incorporated banking institution of this State, brought its action in the Circuit Court of Sumner County against three defendants, to wit: J. F. Carter, a citizen and resident of Sumner County, upon whom personal service was had; the Bank of Allen County, an incorporated institution of Kentucky doing business in said State with no agent or representative in this State; and against Roe B. Elliott, also a non-resident of the State of Tennessee.

The two non-resident defendants, the Bank of Allen County and Elliott, were sought to be brought in by publication only.

Upon a simple affidavit that they were non-residents, publication was had, reciting "that the ordinary process of law cannot be served upon them," therefore ordered that publication be made notifying them to appear, etc.

At the appearance term a declaration was filed against the three, wherein it is alleged that on or about the thirteenth day of October, 1888, Defendant Carter presented to Plaintiff Bank a check for $180.15, drawn by Defendant Elliott upon the Defendant Bank of Allen County, payable to the order of said Carter, and by the latter indorsed; Plaintiff Bank was requested to cash said check,

Bank *v.* Carter.

and the same was cashed as requested; that "before cashing the same the Plaintiff Bank communicated with the Defendant Bank in respect to said check of Defendant Elliott, giving the amount and date of it, and informing it that said check was presented to it, and that plaintiff would cash it if it was good; to which the Defendant Bank replied that it was good, or all right, or to that effect, and thereupon plaintiff cashed the same, paying the amount thereof to Defendant Carter, less the cost of transmitting the same for collection."

It is then alleged that the check was on the same day started in the usual channel to the Defendant Bank, which it reached in due course, and to which it was presented and payment demanded and refused, whereupon the same was duly protested for non-payment, and notice duly given to Elliott the drawer, and Carter the indorser, both of whom likewise refuse to pay, wherefore plaintiff sues, etc., for the amount of said check, interest and protest fees.

The check and notarial protest are exhibited with the declaration.

On a motion to dismiss, treated by the counsel and Court as a plea in abatement (without objection to the form), the suit was dismissed as to the two non-resident defendants; and upon the demurrer of Carter the suit was dismissed as to him; and the plaintiff has appealed in error.

We will first consider the case as to the non-resident defendants.

Granting that upon the case made in the declaration the drawer, payee after indorsement, and drawee are each liable, the conduct of the drawee amounting in legal effect to the certification of the check—which may be given orally as well as in writing—such liability is not joint, but several.

Being several, where is the authority of law for bringing in by publication, in a Court of Law, without property in this State attached, or otherwise impounded, non-resident defendants, simply because of assumed privity with resident defendants, predicated alone upon the fact that they are each parties to a piece of commercial paper? We know of no such law, nor has our attention been called to any statute or decision of this or any other State that sustains jurisdiction to render any judgment in such case against the non-resident.

Of course, if the position of defendant, which is sustained by some authority, be correct—namely, that by certifying the check the drawee bank becomes primarily and solely liable, discharging thereby the drawer and indorser—there could be no jurisdiction acquired over the non-resident drawee by uniting therewith the drawer and resident indorser, against whom no judgment could be rendered by reason of their discharge.

We have, therefore, in deciding that no jurisdiction was had over the non-resident drawee, assumed the liability of the other parties to the paper, which latter proposition we will consider more fully when we come to dispose of the de-

murrer interposed by the indorser, who was served
with process.

Counsel for plaintiff have most earnestly pressed
upon us in the argument the idea that the case
of *Taylor and Wife v. Roundtree,* 15 Lea, 725, is
an adjudication sustaining the jurisdiction by pub-
lication as to non-resident parties on the check,
by reason of the jurisdiction obtained by service
of process on one of them, sufficient to warrant a
personal judgment against such non-resident.　To
our mind there is nothing decided in the case
mentioned to justify the contention of plaintiff in
the case at bar.　Among other things, that case
is distinguishable from this by the fact that there
the suit was in a Court of Chancery, which
clearly had jurisdiction to foreclose the mortgage
upon land situated in the county where the bill
was filed; and for the purpose of foreclosing such
mortgage, publication as to the non-resident mort-
gageors was necessary and authorized. With juris-
diction thus acquired, it was held that the Court
had power to render a personal judgment for the
entire amount of the mortgaged debt (the ascer-
tainment of the amount of which was necessary
to the judgment of foreclosure), notwithstanding
the land ordered to be sold was worth less than
the debt.　The learned Judge writing the opinión
placed the power to pronounce such judgment
upon a construction of § 4352, Subsec. 1, of (T. &
S.) Code (§ 5095 of (M. & V.) Code), which reads:
" Personal service of process on the defendant in

the Court of Chancery is dispensed with in the following cases: 1. When the defendant is a non-resident of the State." The other subsections need not be stated. This is found in Article 3 of Chapter 3, the title to the chapter being "Of the Practice of Courts of Chancery."

The case evidently proceeds upon the idea that the Chancery Court, having jurisdiction of the property of the non-resident upon which publication was authorized, could, after such publication, render judgment for the entire debt. Such also is the case of *Kyle* v. *Phillips*, 6 Bax., 43, which differs from the *Taylor* v. *Roundtree* case only in the fact that the one was the enforcement of a vendor's lien while the other was the foreclosure of a mortgage.

Here we have a case at law with nothing to authorize a publication save the relation of the parties to the same piece of commercial paper, upon which there is a separate and successive liability to a common plaintiff. This will not do. It cannot be sustained upon any ground. With publication unauthorized, we do not reach the question in the Taylor case as to what character of judgment might be rendered in a case where publication is authorized.

Without wishing to be understood as approving or disapproving the two cases referred to, it is sufficient to say that they furnish no authority for plaintiff's contention in the case at bar. They are as far from furnishing an analogy as is *Walker*

v. *Cottrell*, 6 Bax., 257, where is considered the jurisdiction given by §§ 3524 and 3538 (T. & S.) of the Code in attachment cases. It results, therefore, that there was no error in the judgment of the Court in dismissing the suit as to the nonresident defendants.

This brings us to the consideration of the defense interposed by Carter, the indorser and payee of the check. The three grounds of the demurrer need not be stated separately. Briefly stated, they present the contention that, under the case as made in the declaration of a certification of the check by the drawee bank, the said drawee is alone liable. It may be conceded, for the purposes of this case, that ordinarily the certification of a check releases the drawer and other parties thereto. This is certainly true where the holder, instead of presenting the check and demanding payment, as is contemplated by the drawer, presents it for certification and retains it thereafter for his own convenience or purpose. His duty was to demand payment, and, if refused, to notify the drawer. The bank, for its own protection, usually charges up the check, when certified, to its depositor; and as the drawer cannot thereafter check upon the same fund, it would be unjust that the money should be left in the bank at his risk, and he remain liable upon the extended check. The same considerations would be controlling as to the rights and liability of an indorser upon the check under like circumstances.

The check in such a case becomes, as said in some of the authorities, a *quasi* certificate of deposit, and circulates as the representative of so much cash in the certifying bank.

But, as we know from common experience, the drawer himself sometimes has his check certified before he undertakes to use it. In such event it does not lose its character as a check, and he would remain liable, upon notice, after refusal of the bank to pay, just as though the check had been uncertified; and so would any indorser, signing as such after the certification, remain liable where there was no want of due diligence on the part of the holder.

So that, granting all that is or can be claimed for the Defendant Carter as to the effect generally of certifying checks, we are unable to discover any principle that will exonerate him under the case made in the declaration.

The check sued on was not presented for payment by the holder and a certification of the same accepted in lieu of payment.

The check was by the payee presented to a bank other than the drawee, and in a different State, with a request that the same be cashed, which the other bank agrees to do upon the payee indorsing the same, and upon obtaining information from the drawee bank that the check was good; thereupon the bank cashing the same did exactly what was expected by the payee would be done— forwarded the same for payment. How has the

payee and indorser been damnified? If required to make good his indorsement, he is in no worse attitude than he was prior to the cashing of the check by the plaintiff, nor than he would have been had he presented it himself to the drawee bank and been refused payment. In both, and in either event, he has recourse over on the drawer.

While there are well-recognized distinctions between a check and an inland bill of exchange, a check may, under the facts of a particular case, take on many of the qualities and attributes of a bill of exchange.

So that, while it may be ordinarily true that a payee of a check has no right of action against the bank upon which it is drawn, it is manifestly true that where the drawee bank has, before an opportunity for presentment for payment, agreed with the holder, who advances value thereon, to pay it, such drawee becomes, as to such check, in legal effect the acceptor of a bill of exchange, and as such primarily liable, and the drawer and indorsers become successive sureties for the payment to the legal holder, who is free from negligence or fraud. See 2 Parsons on B. & N., 57; *Planters' Bank* v. *Merritt et al.*, 7 Heis., 190, 191; *Bank* v. *Millard*, 10 Wall., 152; *Merchants' Bank* v. *State Bank*, 10 Wall., 647; *Andrews* v. *German National Bank*, 9 Heis., 211; *Schoolfield & Hanover* v. *Moon*, 9 Heis., 171; 1 Parsons on B. & N., 353.

The check having been presented in a reasonable time, as shown in the declaration, and duly

protested, Carter, as indorser, is liable to plaintiff. What is a reasonable time depends upon the locality of the parties and the means of communication.

We need not consider the conflict (more ·apparent than real) concerning the question as to whether, in general, the holder of a certified check has the bank only for his debtor, with the drawer and indorsers discharged, or whether, in · an accepted check, like an accepted bill of exchange, the drawer is to be treated as a surety for the· acceptor, and the indorser as a surety for prior indorsers and for the drawer, for the reason that the result would be the same under the facts of this case, as to Defendant Carter, as we have seen. 2 Daniel on Neg. Ins., Secs. 1601–1606.

Like many such conflicts, each contention is correct, under the particular facts of the cases out of which the conflict is supposed to arise. In my opinion, the true rule can be briefly stated to be, that where the holder of a check, which the drawer and indorsers expect and contemplate to be presented for payment only for his own convenience or purpose, accepts a certification of the check instead, and the check is thereafter not paid, without fault of the drawer or indorsers, they are discharged; and, on the other hand, they remain liable where the certification was procured by the drawer before it was issued, and where it was indorsed after such certification, upon the refusal of the bank to pay, unless the delay, negli-

gence, or fraud of the holder can affirmatively be shown to be the occasion of the loss.

Without further discussion, it is sufficient to say that our judgment as to Carter's liability is placed upon the particular facts of the case as shown, in the declaration, to wit: That he procured the plaintiff to cash the check upon his indorsement of same, with the knowledge that the check would have thereafter to be presented to the drawee bank, who had announced that the same was good, and would be paid, and upon the further fact that the plaintiff did, as soon as possible, in due course present the check and demand payment, and upon refusal had same protested and notice given. In such a case, under all the authorities with which we are acquainted, the indorser is liable to the holder.

Let the judgment as to Carter be reversed and cause remanded for further proceedings.