ALBERT C. NICHOLS, Respondent, v. COMMERCIAL BANK OF BURLINGTON JUNCTION, Appellant.

Kansas City Court of Appeals, November 20, 1893.

1. **Action:** PETITION: EX CONTRACTU. The petition charged the breach of a parol promise to pay a check and that plaintiff was induced thereby to sell certain cattle to L. and receive in payment said check, which defendant refused to pay to plaintiff's damage, etc. *Held,* the action was *ex contractu,* since there is no allegation of fraud or deceit.

2. **Frauds and Perjuries**: ORIGINAL PROMISE: COLLATERAL PROM-
ISE: ESTOPPEL. The evidence in this case is reviewed and it is
*held:*

(1) That the representations of defendant's cashier did not con-
stitute an unconditional promise, but a mere expression of
opinion.

(2) Nor were they an original promise that would bind the defend-
ant.

(3) But if such representation amounted to a promise at all, it was
in its nature collateral and within the statute of frauds.

(4) That the check in question was an inland bill of exchange and
a promise to accept it must be in writing.

(5) That plaintiff's case did not come within the provisions of sec-
tion 723, Revised Statutes, 1889.

(6) That the words and conduct of defendant's cashier could not
operate as an estoppel *in pais,* as one cannot invoke the doctrine
of estoppel to validate a promise which the statute declares
absolutely void.

*Appeal from the Nodaway Circuit Court.*—HON. CYRUS
A. ANTHONY, Judge.

REVERSED.

*William C. Ellison* for appelant.

(1) All of the statements of the assistant cashier
were verbal, and, therefore, created no binding obliga-
tion on the bank to pay the check. A promise to
accept or pay a check, as in the case of bills of
exchange, must be in writing. *Bank v. Bank,* 30 Mo.
App. 271; *Risley v. Bank,* 83 N. Y. 318; *Walton v.
Mandeville,* 56 Iowa, 597; Randolph on Commercial
Paper, vol. 1, sec. 80, says a postdated check is, to all
intents and purposes, a bill of exchange. To the same
effect see *Id.* vol. 2, sec. 568, 648; Daniel on Negotiable
Instruments, vol. 2, sec. 1607; Tiedeman on Commer-
cial Paper, sec. 437; *Bank v. Carter,* 88 Tenn. 279,
Revised Statutes of 1889, vol. 1, secs. 719, 720; *Flato*

*v. Mulhall,* 72 Mo. 522; s. c., 41 Mo. App. 476; *Lee v. Porter,* 18 Mo. App. 377; *Walton v. Mandeville et al.* (9 N. W. 913), 56 Iowa, 597. (2) Assuming that the assistant cashier's agreement in relation to the check, created no obligation which could be enforced against the bank, because void under the statute of frauds, I think it clearly follows that no action in tort, founded on a breach of the agreement, can be sustained. To do so, would be a greater fraud upon the law than is·complained of in this case as having been practiced upon the plaintiff. It cannot be said to be fraudulent to refuse to perform an agreement which one is under no legal obligation to perform. *Dang v. Parker,* 52 N. Y. 494; *Winston v. Young,* 53 N. W. Rep. (Minn.) 1015; *Lydick v. Holland,* 83 Mo. 703; *Bernhart v. Walls,* 29 Mo. App. 206.

*W. W. Ramsay* and *T. J. Johnston* for respondent.

(1) The cashier of a bank is the agent of the bank and the chief manager of its banking business; in short, he is its executive in performing all the offices or functions of its organization and committed by its charter to the directory. *Bissel v. Bank,* 69 Pa. St. 415; *Bank v. Bank,* 1 Parson's Select Cases, 180; *Everett v. United States,* 6 Porter (Ala.) 166; s. c., 30 Am. Dec. 584; *Corser v. Paul,* 41 N. H. 24; s. c. 77 Am. Dec. 753, and note, 759 *et seq.; Ex parte Winson,* 3 Stony, 411. And a bank is bound by the declarations of its cashier made within the scope of his authority; *Bank v. Haskell,* 51 N. H. 116; s. c., 12 Am. Rep. 67. It is not essential to the validity of the act of the cashier that it should be done at the bank or within banking hours. *Bissell v. Bank, supra; Bank v. Bank,* 10 Wall. U. S. 604; *Houghton v. Bank,* 26 Wis. 663; s. c., 7 Am. Rep.

at pp. 110, 111. (2) The defendant is estopped to deny its liability to the plaintiff for the damages resulting to him, by its conduct in inducing him to part with his cattle to one whom it knew to be insolvent at the time, by promising payment for his cattle if he would present Logan's check for them. This is not a case where defendant, through its agent, promised to honor or pay Logan's check already drawn, or to be drawn, for a past consideration, as for cattle already sold—not that; but a promise and statement that induced the plaintiff to deliver his cattle, and who made the inquiry for the purpose of determining whether he should deliver them, and of which purpose defendant was aware, and upon the strength of which, alone, he did deliver them and permit them to be shipped out of the state. *Freeman v. Cook*, 2 Exchq. 654; 2 Herman on Estoppel and Res Jud. 880, 884, sec. 953; *Pickard v. Sears*, 6 Ad. and Ellis 469. (3) Where one, by either acts or words, influences another to act in a particular manner so as to change his previous condition, such an one will not be permitted to deny the truth of such acts or statements to the injury of the other; nor need it be his intention specifically to induce the other to so act; provided his statements or conduct be of such a character as would naturally induce the other to act as he did in relation to the matter. And this applies in all cases where it would be inequitable and against conscience to permit him to deny the truth of his acts or representations. *Horn v. Cole,* 51 N. H. 287; s. c., 12 Am. Rep. 111; *Mitchell v. Reed,* 9 Cal. 205; *Dezell v. O'Dell,* 3 Hill, N. Y. 220; *Buchanan v. Moore,* 13 Serg. & R. 304; s. c., 15 Am. Dec. 601; *Welland Canal Co. v. Hathway,* 8 Wend. 480; *Justices v. Town of Lancaster,* 20 Mo. App. 559, *loc. cit.* 562; *Choteau v. Goddin,* 39 Mo. 229; *Zepp v. Taylor,* 14 Mo. 482; *Guffey v. O'Reiley,* 88 Mo. 418 *loc. cit.* 424; *Espey*

*v. Bank*, 18 Wall. U. S. 604, *loc. cit.* 617, 618, 621; *Nelson v. Bank*, 48 Ill. 36; *Light v. Powers*, 13 Kan. 96; *Bank v. Bank*, 30 Mo. App. 278, 279; *Pope v. Bank*, 59 Barb. N. Y. 226; *Weinstein v. Bank*, 69 Tex. 38; s. c., 5 Am. S. R. 23; *Bank v. Bank*, 50 N. Y. 575; *Bank v. Haskell*, 51 N. H. 116; s. c., 12 Am. Rep. 67 and note 75. (4) Corporations are liable for the acts of their agents within the scope of their powers, and are estopped by the same state of facts as natural persons, as they can only act by agents. *Railroad v. Schuyler et al.*, 34 N. Y. 50, 51; Herman on Estoppel and Res Judicata, secs. 1165, 1369, 1170. The statute of frauds and other statutes require certain contracts to be evidenced by writing; yet a party may so conduct himself, by acts or words, in regard to some matter in which he has an interest, as to estop himself from asserting such right in such matter or thing to the injury of another, who was induced by such acts or words to change his condition; Herman on Estoppel and Res Judicata, secs. 932, 933, 934, 935, *et seq. Wendell v. Renssellaer*, 1 Johns. Ch. 334, *loc. cit.* 335. (5) Where one, assuming to act as agent of and in behalf of a principal, whether so authorized or not, or whether really an agent in fact, if the one in whose behalf he acts, and whom he pretends to represent, afterwards recognizes his acts by appropriating the benefits, or by taking steps to carry out the arrangements of the transactions set on foot by such agent, or assumed agent, if he do so with knowledge of what the transaction is, and its import, he will be bound as though such had been done by his previous authorization; and *a fortiori*, where it would be to the injury of the one with whom such agent or assumed agent had such transaction, for such principal to refuse to carry out the agreement after having so recognized it and taking steps to carry it out. A principal cannot

ratify a transaction in part done by an agent, or assumed agent, acting in his behalf, and repudiate the balance of it. Story on Agency [Bennett's Ed.], sec. 250; Herman on Estoppel and Res Judicata, sec. 1065; 1 Field's Lawyers' Briefs, p. 135, sec. 149; *Busch v. Wilcox*, 82 Mich. 336; s. c., 21 Am S. Rep. 656, 657. *Mundorff v. Wickersham*, 63 Penn. St. 87; s. c., 3 Am. Rep. 531. Story on Agency [Bennett Ed.], secs. 242, 252, 253; *Bank v. Frick*, 75 Mo. 178, *loc. cit.* 183. (6) The undertaking of the defendant was an original and not a collateral one, and therefore did not require to be reduced to or evidenced by writing. The consideration for the promise was the cattle delivered by plaintiff to Logan, and the drawing of the draft by him on Perry Bros.; the defendant, through its agent, promised to pay that consideration if plaintiff would make the delivery and Logan make the draft. And did the defendant bank, the next day after the delivery of the plaintiff's cattle, receive Logan's draft on Perry Bros. for the amount of the purchase price of said cattle and forward it to them at Omaha for payment, just to blind the plaintiff by making him believe it was but the carrying out of the prior arrangement and promise, while in fact it was but the part the bank was to play in the scheme to beat the plaintiff; or was it not rather an act of good faith on the part of the bank to honestly keep and perform its part of the agreement made between its agent, the assistant cashier, and the plaintiff? The law will not tolerate the first supposition—not permit the defendant to thus stultify itself, or take advantage of its own wrong. *Glenn v. Lehnen*, 54 Mo. 45; Brown on Frauds, sec. 197; Wood on Stat. Frauds, secs. 94, 143; *Kansas City S. P. Co. v. Smith*, 36 Mo. App. 608, and citations.

SMITH, P. J.—This is an action brought by plaintiff against the defendant, a corporate bank, to recover damages.

The cause was submitted to the court upon an agreed statement of facts, the substance of which was: *First*. That the plaintiff, a farmer residing near Burlington Junction, entered into a parol contract with one, Logan, whereby the plaintiff was to sell and deliver to the latter at the farm of the former certain cattle at a price to be agreed upon, the cattle to be delivered and the purchase money paid by a check on defendant bank. The cattle were to be shipped to Perry Bros., at Omaha. *Second*. Logan was known to both plaintiff and defendant to be insolvent. *Third*. On the day before the cattle were to be delivered, the plaintiff desiring to know whether the check of Logan for the value of the cattle would be paid by the defendant bank, went to the town of Burlington Junction, and there met the assistant cashier of defendant bank on the street before banking hours, and there stated to him the contract which he had entered into with Logan, and there inquired of said assistant cashier if said Logan's check on his bank for an amount that would cover the value (then not known) of two car loads of cattle, would be good and accepted by his bank; and said assistant cashier answered that Logan had been drawing drafts on Perry Bros., payable to his bank, and Perry Bros. had always promptly honored said drafts, and his bank had been paying Logan's checks on it drawn against said drafts, and that in this instance he had no doubt but that Logan's check on his bank for the cattle *would be good* and *that his bank would pay it;* that Logan had no funds himself, but that if he would make a draft in favor of his bank on Perry Bros. for the amount the cattle would bring, there was no doubt that Perry Bros.

would pay the same, and that he thought there was no risk in the plaintiff's accepting Logan's check for the cattle;—in fact his bank would have paid the check without waiting to hear from the draft. *Fourth*. That relying on the statement of defendant bank's assistant cashier, and believing the same to be true that Logan's check on the defendant bank would be paid by it, the plaintiff was thereby induced to deliver his cattle to Logan, and to accept in payment thereof his check on the defendant bank for the sum of $2,129.65, and the said Logan thereupon received the cattle and shipped them to Perry Bros. at Omaha. *Fifth*. That on the day following the delivery of the cattle and the acceptance of the check by plaintiff, Logan drew a draft in favor of defendant bank on Perry Bros. for an amount covering the purchase price of the plaintiff's cattle, and delivered said draft to the defendant bank; that shortly thereafter, on the same day, the plaintiff indorsed and mailed Logan's check to a bank in a neighboring town where plaintiff owed money, and directed that bank to collect the check in the usual course of business and place the amount thereof to his credit; but fearing this course might not be without risk, and within time to have withdrawn his letter from the mail, he went to the defendant bank and told the assistant cashier what he had done, and asked him if that course would be safe and all right. He answered that *it was all right and the check would be paid*. Neither the draft or check was ever paid, nor has the purchase money for the cattle been received by plaintiff.

The court rendered judgment for plaintiff for $2,207.71, and the question which we are required by by the defendant's appeal to determine is, whether the court applied the law arising on the undisputed facts and rendered thereon the judgment of the law.

Turning to the plaintiff's petition we find it charges the breach of a parol promise of the defendant bank, made through its assistant cashier, to pay a certain check thereafter to be drawn on it. It further charges that by reason of such promise of defendant's cashier, the plaintiff was induced to sell certain cattle to one Logan and receive in payment thereof said check which the defendant had refused to pay, whereby plaintiff is damaged by the loss of said cattle in the sum of $2,129.65. It is seen that, according to this exposition of the petition, the action is *ex contractu*. There is no allegation of fraud or deceit. *Peers v. Davis*, 29 Mo. 184; *Walker v. Martin*, 8 Mo. App. 560.

Recurring to the agreed statement of facts it will be found that the defendant's cashier did not make an explicit, unconditional promise to pay Logan's check. In the language used by defendant's cashier, there is nothing expressed beyond his opinion or conviction. He stated to plaintiff that Logan had no funds himself, but that if he would make a draft in favor of the bank on Perry Bros. for the amount the cattle would bring, there was *no doubt* but that Perry Bros. would honor the same, and that *he thought* there was no risk in the plaintiff accepting Logan's check for the cattle. In fact the bank would have paid the check without waiting to hear from the draft. In the last sentence of the foregoing quotation, the words "*he thought*" are implied after the words "in fact," so that the sentence thus construed would read: "In fact 'he thought' the bank would have paid the check without waiting to hear from the draft." It will be seen that this interpellation is not only authorized by the words of the quotation which precede it, but that they are necessary to convey the full meaning intended to be expressed by the person who spoke them. Nor does the language used by the defendant's assistant

cashier during his conversation with plaintiff on the day after the check had been received by plaintiff express more than an *opinion that plaintiff's course would be safe and all right, and that the check would be paid.* There is nothing from the beginning to the end in any representation or assurance of defendant's assistant cashier that goes further than the mere expression of an opinion that, in the event that certain transactions were had, that the bank would pay the check. This we think to be the full import and meaning of the language employed by defendant's assistant cashier.

It nowhere is made to appear that the plaintiff was induced to receive of Logan his check in payment for the cattle upon the faith of an unconditional promise of defendant's assistant cashier that it would pay such check. The cattle were not sold and delivered to Logan in pursuance of any request or direction of defendant's assistant cashier, or under any promise, if plaintiff would or should do so, that the defendant would pay him the purchase price thereof, so that there is no original promise that would bind the defendant. And since the bank had no funds of Logan, to certify his check would have been but a promise to pay the debt of another, and void under the statute if not made in writing. If the defendant's assistant cashier made any unconditional promise at all to pay Logan's check for plaintiff's cattle, it was, in its very nature, collateral, and, not being in writing, was within the statute of frauds.

But, assuming that the defendant's assistant cashier before or after the sale and delivery of the cattle made a parol promise to pay or accept an existing or nonexisting check of Logan's, still no action can be maintained for a breach of such promise, because not permitted by the statute. Revised Statutes, secs. 719, 720.

We omitted to state at the proper place that the check in question was postdated, and such being the case, it was to all intents and purposes an inland bill of exchange (Randolph on Commercial Paper, secs. 80, 568; *Bank v. Carter*, 88 Tenn. 279), and no action could be maintained on a promise to accept the same, unless it was in writing. *Lee v. Porter*, 18 Mo. App. 377; *Flato v. Mulhall*, 72 Mo. 522.

Nor does section 723, Revised Statutes, help the plaintiff, because he was not the drawer of the check, nor was he otherwise within its provisions. *Brinkman v. Hunter*, 73 Mo. 172; *Flato v. Mulhall, supra; Blackiston v. Dudley*, 5 Duer. 373; *Bank v. Bank*, 30 Mo. App. 271.

But it is insisted that the action can be maintained upon the theory of an *estoppel in pais*. It is quite difficult to understand how this can be so, as it is not perceived that there exists in the case the groundwork of an estoppel. If the parol promise of the defendant's assistant cashier was void in law, this the plaintiff must be presumed to have known, and therefore he had no right to rely upon the same. If he did, he must accept the consequences of his own imprudence. He cannot invoke the doctrine of an estoppel to validate a promise which the statute declares absolutely void. The rule is, that no one can be estopped by an act that is illegal and void, and an estoppel can only operate in favor of a party injured in a case where there is no provision of law forbidding the party against whom the estoppel is to operate from doing the act which is sought to be carried out through its operation. 2 Herman on Estoppel, 922.

This seems to be a case of great hardship on the plaintiff, and we regret that we are unable to find any principle of law applicable to the facts which justifies us in upholding the judgment. It follows that the judgment must be reversed. All concur.