CHARLES E. THOMPSON ET AL., RESPONDENTS, v. MAIN STREET BANK, APPELLANT.—42 S. W. (2d) 56.

Kansas City Court of Appeals. June 10, 1929.

*W. W. McCandles* for respondent.

*Harzfeld, Beach & Steeper* and *C. H. Haas* for appellant.

BLAND, J.—This is a suit upon a check in the sum of $464, dated Kansas City, Missouri, June 13, 1923, signed by Charles Stone as maker, made payable to the order of plaintiff as payee and drawn upon the defendant bank (hereinafter called the bank).

It is claimed by plaintiff that defendant accepted the check and refused to pay the same and the bank is sued on its alleged contract

of acceptance. There was a verdict and judgment in favor of plaintiff in the sum of $595.72. Defendant has appealed.

The facts show that plaintiff is an attorney; that he was employed by one Charles Stone to represent him in a criminal charge pending against Stone in Kansas City; that plaintiff "cleared" said Stone of the accusation; that plaintiff made a charge of $500 for his services in the matter; that thereafter on June 13, 1923, said Stone gave plaintiff the check above described, stating to plaintiff that the check covered all of the money the former had in the bank; that on the day the check was given, or the next day, Stone left Kansas City and went to California; that on June 19, 1923, plaintiff deposited the check in his bank but when it reached the defendant bank payment was refused.

The facts further show that on April 2, 1923, Stone deposited with the defendant the sum of $500 and that no check was drawn upon the account by Stone until June 11. However, on May 12, a check in the sum of $464 was presented to defendant having the name of Stone thereon as maker, but his name was forged to the check. On the last mentioned day defendant paid the forged check. Between that time and June 11, Stone came into the bank and attempted to withdraw the $500 he had on deposit but defendant refused to pay him on the ground that his account had been debited with the sum of $464 on May 12. Thereafter on June 11, Stone presented to the bank a check for $36 which was paid, leaving a balance to his credit in the bank of $464 which he had on deposit at the time he gave plaintiff the check in controversy.

When the bank refused to pay the check involved in this action plaintiff called upon it and presented the check personally. The vice-president of the bank obtained the forged check and showed it to plaintiff, admitted that it was a forgery and orally agreed to pay plaintiff's check. The vice-president said to plaintiff:

" 'Of course, we have to pay, but,' he says, 'we want to find out something about this ourselves, for that reason we want you to go to this address and present all the facts to them, and be whatever assistance you can to them to ferret this matter out.' "

Plaintiff then went to the address given him by the vice-president of the bank, which was the address of the bonding company with which the bank carried insurance, and there conferred with an agnt or agents of the bonding company. Plaintiff had several talks with the investigator for the bonding company in reference to the matter and did not again confer with defendant. He thereafter brought suit against the bank in a justice court. He testified the reason for the taking of this action was because:

"The bank told me they were going to pay me, and all the investigator did was just talk about Stone's brother. He thought he had forged his name. He thought his wife's sister knew how much

he had in the bank, and a lot of stuff like that, and I got tired listening to it."

Plaintiff dismissed the action in the justice court and instituted the present suit in the circuit court. Before bringing the present action plaintiff received a letter from Charles Stone giving him permission to file suit against the defendant in the name of Stone so that plaintiff could collect the money on the check for plaintiff's benefit.

There was evidence on the part of defendant tending to show that the signature upon the forged check was somewhat unlike that of Stone's but similar enough from a banker's standpoint to justify the teller in cashing the check. However, we do not construe defendant's testimony as admitting that the check was not signed by Stone as maker. There was testimony on the part of the defendant tending to show that when the holder of the check came to the bank to get it cashed he was accompanied by Stone and that Stone received the money from defendant.

The petition alleges:

"That on the 13th day of June, 1923, and for sometime prior thereto plaintiff, Charles Stone, had money deposited in the defendant's bank; that on the 12th day of June, 1923, he had the sum of four hundred sixty-four dollars ($464) deposited therein to his credit; that on said date he gave a check drawn to the order of Charles E. Thompson on said bank, that said check was given for valuable consideration to the said Charles E. Thompson; that the said Charles E. Thompson presented said check for payment within a reasonable time and the defendant accepted and agreed to pay same but later failed, neglected and refused to pay. said sum, and although demand payment has been made upon the said defendant, it still refuses to honor and pay said sum of money on said check; that there is now due plaintiff the sum of four hundred sixty-four dollars ($464) with interest at the rate of six per cent per annum from June 13, 1923."

The answer consists of a general denial. The suit was originally instituted in the name of the present plaintiff and Charles Stone, but at the conclusion of the testimony the court indicated that he would require a dismissal as to one or the other of the plaintiffs and the cause was dismissed as to Stone.

Defendant insists that the court erred in overruling its demurrer to the evidence. In this connection it is contended that the demurrer should have been sustained:

(a) "Because there was a misjoinder of parties plaintiff.

(b) "The petition, even as amended, does not state a cause of action since it does not say that the defendant ever agreed in writing to pay the check sued on.

(c) "The evidence does not show the respondent presented said check for payment within a reasonable time."

Defendant is not in a position to insist that a demurrer to the evidence should have been sustained for the reason that no written demurrer was filed and defendant joined with plaintiff in offering and having the court give instructions upon the merits. [Berkshire v. Holcker, 216 S. W. 556, 560; Smith v. Greenstone, 208 S. W. 628; Felty v. Dunlap, 203 S. W. 651.]

The record shows that the attorney for the defendant at the close of the testimony stated to the court: "I offer . . . a demurrer (to the evidence) at the close of the whole case." The court overruled the demurrer and defendant excepted. Under our practice a demurrer to the evidence consists of a peremptory instruction to the jury to find for a party. The statute (section 1417, R. S. 1919) provides that instructions to the jury shall be in writing. In treating of a demurrer to the evidence the Supreme Court stated in McClure v. Campbell, 148 Mo. 96, 112:

"Until the instructions are given there is no adverse ruling of the court which finally precludes a recovery by the plaintiff, for the court is required by section 2188, Revised Statutes 1889, to 'give' or 'refuse' the instructions *in writing* asked by the parties or may give instructions of its own motion. Until the court *so acts* there has been no ruling or action of the court, with respect to instructions." (Italics ours.) [See also Lewis v. Mining Co., 199 Mo. 463, 466, 467; Carter v. O'Neill, 102 Mo. 391, 393.] For all the record discloses the court may have overruled the demurrer to the evidence for the reason that it was not in writing.

However, it is contended that the court erred in giving plaintiff's instruction No. A which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that on the 2nd day of April, 1923, Charles Stone deposited with the defendant bank the sum of $500 to his credit and that on the 13th day of June, 1923, the said Charles Stone had money on deposit in said bank in the sum of $464, and that on the 13th day of June, 1923, the said Charles Stone issued and delivered to the plaintiff, Charles E. Thompson, a check written in favor of said Charles E. Thompson, plaintiff, in the sum of $464 on the defendant bank, and that said check was given for a valuable consideration and that said Charles E. Thompson presented said check for payment within a reasonable time and that the defendant bank then and there accepted same and agreed to pay the plaintiff the amount of said check, then it will be your duty to find the issues in favor of the plaintiff and against the defendant."

We think there is no question but that this instruction is erroneous. It is true that the failure of the defendant to demur to the evidence

admits that plaintiff made out a case under the petition. However, the statute (sections 819, 975, R. S. 1919) requires an acceptance by a drawee of a check to be in writing. While the petition is broad enough to be construed as alleging an acceptance in writing, as it does not show upon its face that it was not in writing (Barndsall v. Waltemeyer, 142 Fed. 415), and therefore states a cause of action, the instruction fails to submit an acceptance in writing but is broad enough to permit the jury to find that there was an oral acceptance.

However, it is claimed by the plaintiff that the instruction not only had the jury find that the defendant accepted the check but that it agreed to pay plaintiff the amount of the check. An agreement to pay a check is of no greater force or effect than an acceptance of a check and the two must be construed to mean the same thing in this instance (Dickinson v. Marsh, 57 Mo. App. 566, 569; Nichols v. Commercial Bank of Burlington Junction, 55 Mo. App. 81, 90; 3 R. C. L. 1303), although they are not always identical. [Lone Star Trucking Co. v. Bank (Tex.), 240 S. W. 1000, 1002.]

It is claimed that there was evidence that the money that Stone had in the bank was assigned to plaintiff. In this connection the fact that Stone permitted plaintiff to use his name in bringing this suit and that the money is still in the bank is stressed. However, it appears that Stone gave a check to plaintiff for the entire balance he had in the bank, at the time stating that this was all of the money he had in the bank. It is well settled that an assignment of the entire fund constitutes an equitable assignment of the fund upon notice to the drawee and that no acceptance of any kind by the drawee is required. [See McEwen v. Sterling State Bank, 5 S. W. (2d) 702.] But the petition is not based upon the theory of an equitable assignment. It does not state that $464 was the entire amount that Stone had on deposit in the bank but is clearly based upon the theory that there was an acceptance of the check.

It is claimed, however, that the bank agreed to pay the check upon a consideration. In this connection plaintiff says:

"Even though defendant had not formally accepted the check its verbal agreement to pay same upon the consideration that plaintiff would assist the bank and the insurance carrier in ferreting the matter out and running it down was sufficient to hold the bank liable."

Taking plaintiff's testimony in its most favorable light to him it may show that the bank verbally agreed to accept or pay the check and then suggested that he see the bonding company and help ferret out the matter of forgery. It therefore, appears that what plaintiff did was a matter of accommodation to the bank and was not in consideration of the agreement of the bank to accept or pay the check, because the bank unconditionally but orally agreed to accept

or pay the check at the time plaintiff called upon it. However, we need not pass upon this matter for the reason there was no demurrer to the testimony, but it is sufficient for us to say that the instruction does not proceed upon any theory of an acceptance or an agreement to pay upon a consideration. The cause has never been presented to a jury upon such a theory.

It is claimed by plaintiff that there was an implied and constructive acceptance by defendant, although there was no acceptance in writing. It has been broadly stated that the section of the Negotiable Instruments Law providing that an acceptance must be in writing has abolished implied acceptance, except an implied or a constructive acceptance provided for by the statute (sections 922, 923, R. S. 1919), declaring that the action of the drawee in destroying a bill or not returning it shall be deemed an acceptance of it. [3 R. C. L. 1303.] See also Wisner v. First National Bank, 68 Atl. 955, 956, 957, cited with approval in the case of So. Creosoting Co. v. C. & A. R. Co., 205 S. W. 716, 719, and holding that unaffected or controlled by statute an acceptance of a bill of exchange may be implied from the conduct of the drawee, but the matter is now affected and controlled by the Negotiable Instruments Law. In the Wisner case, l. c. 957, the court said:

"An implied or verbal acceptance of a bill is abolished by the act and there are now only two modes of accepting a bill: (1) By writing, signed by the drawee, as provided in section 132; and (2) by a nonreturn of the bill, which is declared by the section under consideration to be the equivalent of an acceptance."

However, there no doubt may be cases where the drawee is estopped to deny that there has been an acceptance in writing and this is referred to as constructive acceptance. [See Westburg v. C. L. & C. Co., 117 Wis. 589, 592.]

In discussing the question of implied and constructive acceptance of the check by the defendant in the present case, plaintiff states:

"In the case at bar the defendant bank did not accept the check in writing, but it did more than impliedly accept it, it expressly accepted the check. True it did so orally but it accepted it in express terms and agreed, to pay same for a valuable consideration, the consideration being that the plaintiff do certain things in aiding the bank in ferreting out and determining the forger and doubtless being able to recoupe and get back the money it lost. The defendant bank is estopped now to deny that it accepted the check and estopped to deny its liability."

Further in his brief plaintiff says:

"In the case at bar defendant is estopped to deny its acceptance of the check and its agreement to pay. In the case of Southern Creosoting Company, above, supra, the court said in that case that the plaintiff was possibly prejudiced. In the case at bar, there is

no doubt but what the plaintiff was prejudiced. While Charles Stone had been arrested for robbery, nevertheless, he had been cleared and there is nothing to indicate from the record that he was a criminal. If the plaintiff in this case had not have relied upon acceptance and payment of the check for thirty or sixty days or more it is very possible that he could have gotten hold of Stone and collected his money from him direct, but he was lulled into security by the conduct of the bank, having had numerous conferences, at least a dozen with the vice-president of the bank and its insurance company. During that time Stone went to California and could not be located. The bank having the money in its possession now could not equitably be held to say that it should not pay. That there was a forgery there is no doubt. If so, consequently, the bank should be required to pay and is not acting in good faith by not paying the plaintiff or at least placing the money in escrow somewhere so that either the plaintiff or Charles Stone may get this money.''

The main trouble with plaintiff's contentions is that his instruction A is not based upon estoppel. It does not submit any facts to the jury which, if found by them, would constitute estoppel. No such theory was ever presented to the jury, consequently it has never been passed upon.

As the case will no doubt be retried it is proper that we should now pass upon the question as to whether or not there was any testimoney of an implied or constructive acceptance of the check by the defendant, that is, acceptance by estoppel *in pais*. Plaintiff is in error in stating, in effect, that during the numerous conferences between plaintiff and the agent of the bank (the agent with whom plaintiff had numerous conferences was the investigator for the bonding company and not the vice-president of the bank, as he had only one conference with the latter), Stone was in this State. Plaintiff's evidence tends to show that Stone went to California the day he gave plaintiff the check or the day after. However, that may be, there is no evidence of any implied or constructive acceptance of the check by the defendant.

The case of Southern Creosoting Company v. R. R. relied upon by plaintiff does not bear out his contention. In that case a construction company · was building a pier for the defendant railroad and had purchased certain material from the plaintiff. The construction company gave an order to plaintiff on the railroad company to pay plaintiff a certain sum of money due for material purchased by the construction company and used in the pier. There were many telegrams and letters passing between the railroad company and the plaintiff in connection with the order, relative to its acceptance and when payment would be made thereon. During the passing of these letters and telegrams the railroad company actually

paid plaintiff a part of the money. Construing the letters and telegrams passing between the parties, the commissioner held them to mean that the defendant intended to be bound by the order upon it given plaintiff by the construction company on the single condition that there should be a sufficient amount due the construction company for the material actually furnished by plaintiff and used in the work. The commissioner then found that this condition had been complied with and, therefore, plaintiff was entitled to recover. The commissioner of the Supreme Court who wrote the opinion in that case seems to have found that there was an implied and a constructive acceptance by the Railroad Company of the order in that case. The opinion has been criticized upon several grounds (see Brannan's Neg. Insts. Law, p. 825) and it was not concurred in by the majority of the court. [State v. Davis, 284 S. W. 464.]

However, we believe that this case may be distinguished from the Southern Creosoting case. In that case the communications of the railroad company to the plaintiff were evasive from the beginning and it led plaintiff to believe that it probably would accept the order. Plaintiff was "lured on" by defendant's conduct. The communications extended over several months during which time the railroad company actually paid a part of the order and finally the correspondence showed "a definite and clear understanding that the defendant would pay the order upon the condition mentioned." Both parties clearly so understood the communications and plaintiff relied upon this understanding "and possibly neglected recourse to other methods of compelling payment." In the case at bar defendant did nothing whatever to deceive plaintiff before the time of the alleged acceptance of the check. There was no deception in this case unless defendant's conduct in accepting the check orally and then defending on the ground that the acceptance was not in writing can be construed as a deception. Of course, estoppel *in pais* cannot be based upon a situation of this kind. [Nichols v. Bank, supra, l. c. 91.]

There is no element of estoppel in the case at bar. There is no evidence that Stone was solvent when defendant orally agreed to pay the check and has since become insolvent or that he has absconded and cannot be found. Instead of disappearing it appears that Stone is friendly to plaintiff and is attempting to assist plaintiff in getting the money from the bank. There is nothing in the testimony to show that recovery against Stone cannot be had as readily as when the agreement to pay the check was originally made. We are by no means to be construed as holding that even if Stone had absconded or become insolvent since the agreement of the bank to pay the check, there would be any estoppel on the part of the bank in view of the lack of other circumstances necessary to constitute estoppel. There

is no question that if the check for $464 which the bank paid was a forgery and Stone did not get the money, plaintiff has not been damaged at all in this matter, in view of the fact that it is admitted that said sum is still on deposit in the bank subject to the check, provided there was a forgery. If there was a forgery then there was an equitable assignment of the fund and defendant is liable.

It is claimed that the evidence shows that there was an actual assignment of the cause of action that Stone has against the bank for its failure to honor his check. Of course, the petition was not based upon any such theory, nor was plaintiff's instruction. While it is true that the failure of the defendant to properly demur to the evidence and its joining with plaintiff in submitting the case to the jury is tantamount to an admission that there was sufficient evidence for the consideration of the jury to show the liability on the part of the defendant alleged in the petition, the facts submitted in plaintiff's instruction No. A, which directed a verdict for him, are not sufficient to authorize a recovery for plaintiff under the allegations of the petition. While the court gave several instructions at the request of the defendant none of them was a counterpart of plaintiff's instruction A and we fail to find anything in the record establishing that defendant tried the case upon the theory submitted in that instruction which was without the issues raised in the petition.

On account of the error in giving plaintiff's Instruction A the judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.