# First National Bank of Northumberland *versus* McMichael.

1. The holder of a check cannot sue the bank upon which it is drawn unless the bank has either expressly or impliedly accepted the check. What acts upon the part of a bank are tantamount to acceptance is a question for the jury to determine under proper instructions.

2. A bank is under no legal obligation to the holder of a check drawn upon it, to pay or accept the check, whether the funds of its depositor are sufficient to meet the check or not. But if the bank does not pay or accept the check on presentation, it is bound to refuse within the proper time ; it has no right to receive and keep the check for an indefinite time (longer, it seems, than the next day at farthest), and then to refuse payment.

3. A check was sent by mail from one bank, whose customer had deposited it there for collection, to another bank on which it was drawn with instructions to " return it promptly if not paid." It was received on the day following its date, and at that time the drawer's account was sufficient to pay the check. Three days later the drawee received notice from the drawer not to pay the check. The drawee accordingly caused the check to be protested on the day following, and returned to the bank through whom it had been forwarded for collection. The holder of the check having brought suit against the drawee bank for the amount thereof :

*Held*, that it was for the jury to determine whether or not the check had been accepted by the bank on which it was drawn.

April 30, 1884. Before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. MERCUR, C. J., and CLARK, J., absent.

ERROR to the Court of Common Pleas, of *Northumberland county:* Of July Term, 1883, No. 162.

Assumpsit, by Charles B. McMichael against the First National Bank of Northumberland upon two checks dated March 5th and 10th, 1875, for $510 each, drawn by the National Fire Insurance Company of Philadelphia upon the defendant bank, to the order of the plaintiff, Charles B. McMichael.

On the trial, before ROCKEFELLER, P. J., the following facts appeared: In February, 1875, the National Fire Insurance Company of Philadelphia had an account with the First National Bank of Northumberland, and had arranged with the latter that whenever the bank received a check of the insurance company they should draw a sight draft for the same amount on the insurance company to pay the check. In accordance with this, their usual course of dealing, the insurance company was accustomed to draw checks upon the defendant bank without having any funds on deposit to meet it. McMichael, the plaintiff, had insured in the National Fire Insurance Company, and having sustained a loss, received therefrom in settlement, during the month of February, 1875, the two checks in suit, post dated on the 5th and 10th days of the month of March following. McMichael deposited the checks with the First National Bank of Philadelphia, which on March 5, 1875, sent them to the defendant bank, with a letter containing these instructions: "Do not hold collections. Return promptly if not paid." This letter and the checks enclosed were received by the defendant on the day following, viz.: March 6, 1875, at which time the balance in favor of the National Insurance Company on the defendant's books was some fifteen hundred dollars more than the amount of outstanding checks, which balance by the 10th inst. was increased to $10,235.01. On March 8th the treasurer of the National Insurance Company wrote to the defendant bank not to pay the two checks drawn to the plaintiff's order. This letter was received on the 9th instant and in accordance with it, on the following day both checks were protested for non-payment. During this time the bank was very scarce of actual cash, and was often compelled to borrow small sums of money to meet current demands.

The defendant requested the court to charge as follows:

"That the plaintiff is not entitled to recover on the evidence submitted by him, because he has failed to show that the defendant accepted either of the checks in suit by charging them to the drawer or by certifying the checks."

Answer. "I do not affirm this point, but leave it to you to determine whether the plaintiff has shown an acceptance of

the check of March 5, 1875, in suit. Charging them to the drawer or certifying them would certainly be evidence of their acceptance, but I am of opinion that this is not the only evidence the law admits of."

The court further charged as follows: "Now, all checks are payable on demand, or on presentation at the bank upon which they are drawn, and I leave it to you to determine whether these two checks were received by the defendant at Northumberland on the 6th day of March, and whether they were retained by the bank from that time until the 10th. One, you will recollect, is dated on the 10th, and therefore it could not have been presented for payment until that time, and the evidence is that the bank, instead of paying it on that day, caused it to be protested. Therefore, there was no acceptance of that check, and for that reason we instruct you there can be no recovery by the plaintiff against this bank for the amount of that check. The other check, however, is dated the 5th of March, and it is contended by the plaintiff that it was sent and received by the bank on the 6th, the day after its date, which, as I stated, is a matter I submit to you to be determined from the testimony in the case. It was unquestionably the duty of the bank, if it had funds in its possession belonging to the drawer, the National Fire Insurance Company, to pay it—to accept it and inform the bank at Philadelphia, from whom it was sent, of such acceptance. That I believe to be the usual practice. Although that was the duty of the defendant, the bank [yet I do not say to you that the mere fact that the bank at Philadelphia was not informed immediately of the refusal, that is, upon the day, it is of itself evidence of an acceptance, but leave it to you to determine whether, if the bank of Northumberland, the defendant, received this check of March 5th on the 6th of the same month and retained it until the 10th, it accepted it.] If you find from all the facts and circumstances in the case that the bank accepted that check at the time it was received from the bank in Philadelphia, the plaintiff will be entitled to a verdict for the amount of the check, with interest from the time that the amount was demanded from the bank, the defendant. If you find there was no acceptance, then you will find a verdict for the defendant.

Verdict for the plaintiff for $662.72, and judgment thereon. Whereupon defendant took this writ of error, assigning for error the refusal of the court to charge as requested; and that portion of the general charge of the court enclosed in brackets as above.

*J. A. Cake*, for the plaintiff in error.—The holder of a check

before certification or acceptance of it by the bank, has no right of action against the bank. The bank owes no duty to the holder of a check drawn against it until it has, by its own voluntary act, created one; *i. e.*, by certifying the same, or by charging the drawer with the amount thereof: Bank of the Republic *v*. Millard, 10 Wall., 156. That portion of the charge assigned for error amounts to an instruction that if a bank receives a check by mail and retains it for four days before it protests it, the holding of the check for four days by the bank was an acceptance, and as such would give the holder of a check the right to recover the amount thereof from the bank, defendant.

In the Seventh National Bank *v*. Cook, 23 P. F. S., 483, cited by the court below, it was held that the charging of the check to the account of the drawer was an acceptance of it by the bank, and, therefore, the drawer or holder was entitled to recover. In Saylor *v*. Bushong, 4 Out., 23, it was held that the holder of a check cannot sue the drawees unless they have accepted the check, either expressly or impliedly. It is usual for banks receiving more than one remittance in a letter, payable within a few days of each other, to hold the one first due until the last is due also, and then make return of both at the same time.

*Sharp*, (with whom were *Alleman* and *George Hill & Son*), for defendant in error.—Charging the drawers or certifying the drawer's check are acts amounting to an acceptance of it, but the case of Bank of the Republic *v*. Millard, 10 Wall., 152, does not decide that these are the only acts which are equivalent to an acceptance. In this present case the bank received the check and held it beyond a reasonable time for its return. The inference would be that it had been honored, and the Philadelphia bank would have been justified in paying its depositor the amount of the check. The bank had no right to defer the payment with the intention of making or refusing it at a later date according to subsequent occurrences: Morse on Banks and Banking, pp. 248, 470; Grant on Banking, pp. 64, 65; Story on Promissory notes, §§ 104, 117. By retaining the check in the face of express instructions to return it promptly if not paid the bank impliedly promised to pay it: Saylor *v*. Bushong, 4 Out., 23; Boyd *v*. Emmerson, 2 A. & E., 184; Kilsby *v*. Williams, 5 B. & Ald., 815; Laubach *v*. Leibert, 6 Norris, 55; Bank of Mt. Joy *v*. Gish's Assignee, 22 P. F. S., 13.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

The learned court below left to the jury the question

[Northumberland Bank *v.* McMichael.]

whether the defendant bank had accepted the check upon which the suit was brought. This is necessarily a question of fact and was therefore proper for the determination of the jury unless it can be truly said there was no evidence of acceptance. The action of the court in submitting the question, constitutes the substance of the only two errors assigned. It is contended on behalf of the bank that the only modes of acceptance which would bind the bank by a legal obligation to the holder, are a certification of the check or charging it to the account of the drawer. Certainly, this proposition is too broadly stated, and cannot be sound, since it would exclude the case of an express acceptance in words, and also a retention of the check and a positive promise to pay it. The case of Bank *v.* Millard, 10 Wall., 152, relied upon by the bank does not decide that certifying and charging up the check are the *only* modes of acceptance, but simply that those modes will impose an obligation upon the bank to pay the holder. In this case the bank received the check by mail from another bank with which it had been deposited for collection. It was dated March 5th, 1875, and was received the morning following by the defendant bank. There was more than enough money to pay it to the credit of the drawer of the check at that time and continuously thereafter until March 10th. The check was retained by the defendant bank until the 10th, when it was protested in consequence of a letter from the drawer, an insurance company, directing the defendant not to pay the check. This letter was written on the 8th and received on the 9th of March, and the next day the check was protested. The letter from the collecting bank which enclosed the check in suit, and another, contained the following direction, "Do not hold collections. Return promptly if not paid." The evidence also showed that the defendant bank was very short of actual money in hand about that time, often being obliged to borrow small sums, fifty to a hundred dollars, to meet current demands. In these circumstances the question is, was there any evidence of acceptance of the check in suit by the defendant bank? If there was, the ruling of the court below was correct. It seems to us the facts in evidence were highly convincing proof of the fact of acceptance. Bank checks are payable on demand upon mere presentation. They constitute by far the largest part of the practical currency of the business world, and are of the greatest possible consequence in commercial transactions. A bank is not bound, by a legal obligation to the holder, to pay or accept a check drawn by a depositor, although there may be funds of the drawer sufficient for the purpose to his credit at the time of presentment. But if it does not pay or accept, it

is bound to refuse. It has no right to receive and keep the check indefinitely, thereby leaving the holder to suppose that it has accepted the check and assumed its payment. In Morse on Banking, p. 248, it is said: "The bank has no right to defer the payment with the intention of making or refusing it at a later hour, according as it shall be influenced by subsequent occurrences. If payment is demanded at noon upon a check which the depositor's unincumbered balance at that hour is sufficient to pay in full, the obligation of the bank to pay it in full is at once mature and perfect."

In the cases of Kilsby *v.* Williams, 5 B. & Ald., 815, and Boyd *v.* Emmerson, 2 Ad. & Ell., 184, it was held that where the check was drawn upon the persons who were bankers both for the drawer and the payee, the bankers were entitled to one day's time to determine whether they were in funds with which to pay the check, and that by giving notice of refusal on the following day, they were relieved from liability merely on the ground that they had retained the check for the one day. These rulings were put expressly upon the ground that the bankers were the agents of the payee to receive payment as soon as the money could be collected, and were therefore entitled to the usual time allowed to collecting agents. In the first of the cases cited the check was paid in without anything being said, or any entry made, but there was a recovery notwithstanding a notice of refusal given the next day, because, during the day sufficient funds were paid in by the drawer to make the check good, and it was held to be the duty of the bankers, as the payees' agents, having retained the check to apply the first moneys coming in, to its payment. In the second case there was no recovery, because the bankers were not placed in funds by the end of the day, and they gave notice of refusal the next day, and this was held to be in sufficient time to relieve them from liability on the mere ground of delay in giving the notice. But in neither of these cases was it intimated that a delay of more than one day would have been tolerated, whether the bankers were in funds or not. In our own recent case of Saylor *v.* Bushong, 4 Out., 23, it was held that an acceptance of the check might be implied from the circumstance that in settling the drawer's account, the drawees retained an amount sufficient to meet the outstanding check drawn in favor of the plaintiff.

In the present case it is not pretended there was any refusal of the check at the time of its presentment, or for several days thereafter. The depositor's account was much more than good for the amount of the check during all that time. Both the holder and the collecting bank might well have inferred the check was or would be paid. The delay in actual pay-

10 OUTERBRIDGE.—30.

ment was easily accounted for, both by the way in which the defendant bank usually paid such checks, and by the fact that it was short of money at that time.   The delay, therefore, was entirely consistent with an acceptance, and was quite inconsistent with a refusal, since, if a refusal was intended, notice would naturally, and ought legally, to have been given at once, either on the same, or at the farthest, the next day.   An acceptance was therefore the natural inference from all the facts, and the court was right in submitting, and the jury in finding, the fact of acceptance.

Judgment affirmed.