# Wisner, Appellant, *v.* The First National Bank of Gallitzin.

220    21
137SC    18

*Banks and banking—Checks—Return of check within twenty-four hours
—Protest—Notary public—Negotiable instruments Act of May 16, 1901,
sec. 137, P. L. 194.*

Under sec. 137 of negotiable instruments Act of May 16, 1901, P. L.
194, the failure or neglect of a drawee to whom a bill is delivered for
acceptance to return the bill, accepted or nonaccepted, to the holder
within twenty-four hours after delivery, makes the drawee an acceptor
of the bill. As sec. 185 of the act declares in express terms that a check
is a bill of exchange, the provisions of sec. 137 apply to a check.

The word "refuses" in the act does not mean tortious refusal, nor
does it imply that a previous demand for the return of the check to the
holder shall be made. The word is to be construed so as to cover a
failure or neglect to return the check.

The act of the bank in delivering the check to a notary public for
protest is not a compliance with sec. 137 of the act, and does not re-
lieve the bank from liability for failure to return the check within
twenty-four hours.

While protesting a bill of exchange or check is permissible it is not
mandatory under the negotiable instruments act, as sec. 118 specifically
provides that "protest is not required, except in case of foreign bills
of exchange," and sec. 152 declares that "where a bill does not appear
on its face to be a foreign bill, protest thereof in case of dishonor is
unnecessary.

Argued Oct. 16, 1907. Appeal, No. 107, Oct. T., 1907, by
plaintiff, from judgment of C. P. Cambria Co., June T., 1905,
No. 438, for defendant non obstante veredicto in case of A. L.
Wisner, trading as A. L. Wisner & Co., v. The First National
Bank of Gallitzin. Before MITCHELL, C. J., FELL, BROWN,
MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit for loss alleged to have been caused by failure to
return checks. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for defendant non
obstante veredicto.

*O. H. Hewitt*, with him *A. V. Barker, Fred D. Barker* and *S. C. Herriman*, for appellant.—Prior to the adoption of the statute an acceptance was implied from various acts and circumstances. The holding of a bill for an unreasonable time without acceptance or refusal implied an acceptance, and more than twenty-four hours was considered an unreasonable time : Northumberland Bank v. McMichael, 106 Pa. 460.

The plaintiff in this case did not rely on an implied acceptance of the bill or on a conversion. The plaintiff relied on the statute, and evidence that the checks sued on had been placed in the hands of a notary, or that defendant had notified the sending bank of nonacceptance, was therefore utterly immaterial. No evidence of nonacceptance was material, because the statute says that detention beyond twenty-four hours shall be an acceptance : Com. v. Pratt, 132 Mass. 246 ; Leonard v. Grant, 5 Fed. Repr. 11.

*John E. Evans*, with him *George W. Flowers* and *Charles S. Evans*, for appellee.—Section 137 of the Act of 1901, P. L. 194, does not apply to a check presented for payment.

We urge this position for the following reasons :

1. Section 137 of the act of 1901 is penal in its nature, and must be strictly construed.

2. The section refers only to a bill delivered for acceptance : Westberg v. Chicago Lumber & Coal Co., 117 Wis. 589 (94 N. W. Repr. 572).

The word " refusal " in section 137 of the Act of May 16, 1901, P. L. 194, means a tortious or wrongful refusal to return, amounting to a conversion of the bill : Westberg v. Chicago Lumber & Coal Co., 117 Wis. 589 (94 N. W. Repr. 572); Matteson v. Moulton, 11 Hun (N. Y.), 268, affirmed in 79 N. Y. 627 ; Dickinson v. Marsh, 57 Mo. App. 566 ; Rusch v. Duff, 35 Mo. 312.

A notary public, in protesting commercial paper and giving notice of dishonor, is as well the agent of the holder as of the collecting bank : Bellemire v. U. S. Bank, 1 Miles, 173 ; Bellemire v. U. S. Bank, 4 Whart. 105 ; Randolph on Commercial Paper, sec. 1237.

Opinion by Mr. Justice Mestrezat, January 6, 1908 :

Samuel R. Bullock drew six checks on the defendant bank

in favor of Charles W. Gallaer, Jr., who deposited them in the plaintiff bank in New York City, which credited them to his account in that bank. The first check is dated December 27, 1904, and the last, January 3, 1905. The plaintiff sent these checks to the defendant bank, two of them through the First National Bank of Altoona, Pa., and the remaining four through the Farmers' Deposit National Bank of Pittsburg. On the day they were received, the defendant bank handed the several checks to a notary public, usually employed by it, for the purpose of protest, and he held the checks without protesting them or giving notice of dishonor. On January 9, 1905, some days after the checks had been delivered to the notary, the cashier of the Altoona bank went to Gallitzin, obtained the checks from the notary, took them to the Gallitzin bank, whose cashier gave the cashier of the Altoona bank a letter to a notary public in Altoona inclosing five of the Bullock checks with the request that they be protested for want of sufficient funds in the Gallitzin bank to pay them. One of the two checks sent by the Altoona bank to the defendant bank was returned to the former bank on the same day. It was conceded by the plaintiff on the trial below that there could be no recovery for this check. The other check sent by the Altoona bank and the four checks sent by the Pittsburg bank to the defendant bank were not returned by the defendant to the collecting banks for more than two days after their delivery to the latter bank. With the one exception, the Bullock checks were not returned to the defendant bank by the notary public to whom they were delivered for protest within twenty-four hours after their receipt from the transmitting bank. The checks, therefore, with the one exception were not returned to the collecting banks within twenty-four hours after their delivery to the drawee bank, the defendant in this action.

This is an action of assumpsit brought by the plaintiff, the holder of the checks, to recover the amount of the checks on the ground that the drawee bank, the defendant, had accepted the checks by its refusal and failure to return them within twenty-four hours after their receipt, as required by sec. 137 of the Act of assembly of May 16, 1901, P. L. 194, 3 Purd. (13th ed.) 3250, known as the negotiable instruments law.

The defendant claims that it is relieved from liability on the checks because it had refused to accept them and had, on the day of their receipt, delivered them to a notary public for protest and dishonor.  The learned trial judge was of the opinion and so instructed the jury that the defendant had not by its conduct "relieved itself from the presumption that it had accepted these checks by any evidence which it had produced in the case," and that the verdict should be for the plaintiff for the amount of the five checks.  Subsequently, the court on motion of defendant's counsel entered judgment for the defendant non obstante veredicto on the entire record. The learned court in its opinion entering judgment for the defendant held that under the negotiable instruments law it was necessary for the holder in order to recover against the drawee bank, to prove a conversion of the checks, and that the mere retention of them for more than twenty-four hours, without a demand for their return, is not a refusal within the meaning of the statute.  The plaintiff has taken this appeal.

Unaffected or uncontrolled by statute, an acceptance of a bill of exchange or check may be implied from the conduct of the drawee.  Such acts or conduct on his part which indicate clearly an intention to honor the bill and from which the drawer may infer such intention is regarded as an acceptance, and will impose liability on the drawee.  In First National Bank of Northumberland v. McMichael, 106 Pa. 460, the essential facts of which are strikingly similar to those of the case in hand, this court held that where a check had been sent by the collecting bank to the drawee bank in another city and the latter did not pay or accept it on presentation, the bank was bound to refuse within the proper time, and failing to do so, was deemed to have accepted the check and was liable to the payee.  But the rule, however, well established, gives rise to great uncertainty as to what conduct or acts of a drawee are the equivalent of an acceptance of negotiable paper.  Unreasonable detention as well as the destruction of the bill, retaining sufficient funds to meet an outstanding check by the drawee in settling the drawer's account, and other circumstances are regarded as an implied acceptance.  But what are a prolonged or unreasonable detention of the bill and the other circumstances which should be considered or held to be an

acceptance by implication are necessarily questions of fact for a jury, Northumberland Bank v. McMichael, supra; and hence the liability of the drawee on an alleged acceptance is not determined by any fixed rule or standard, but whether a jury thinks that the drawee's conduct amounts to an implied acceptance. This necessarily leaves the question of acceptance of the bill in the domain of uncertainty and affects very seriously its value. It is true there is an implied obligation on the drawee to act promptly in accepting or refusing a bill of exchange, but the law merchant gives no definite or fixed method by which to determine whether he has performed the imposed duty.

Within the last few years, the legislatures of several of the states have codified the law on the subject of negotiable instruments. Some of the provisions of the several statutes are simply declaratory of the existing law, while others have altered or changed the law as heretofore declared. The purpose of the legislation is to produce uniformity on the subject among the several states, and to make certain and definite by statute the rules of the law governing negotiable paper. The acts in the different states are very similar, many of their provisions being identical in language, and the manifest purpose of all is, as far as possible, to prescribe definite and fixed rules regulating the entire subject. In closing the opinion of the supreme court of appeals of Virginia in Baltimore & Ohio Railroad Company v. First National Bank of Alexandria, 102 Va. 753, a case involving the construction of certain provisions of the negotiable instruments law of that state, KEITH, President, very aptly said (p. 757): "This opinion might be greatly prolonged by citation of conflicting cases, and a discussion of the discordant views entertained by courts and text-writers of the greatest ability upon these questions; but the object, as we understand it, of the codification of the law with respect to negotiable instruments was to relieve the courts of this duty, and to render certain and unambiguous that which had theretofore been doubtful and obscure, so that the business of the commercial world, largely transacted through the agency of negotiable paper, might be conducted in obedience to a written law emanating from a source whose authority admits of no question." In view of the rulings in

some of the decisions interpreting the negotiable instruments law, however, it may not be inappropriate to note the suggestion in the address of the learned president of the fourteenth annual conference of commissioners of uniform state law. He said : " However clear the statute (negotiable instruments law), there is an unfortunate tendency of the courts to fall back to the old law."

The negotiable instruments law of this state was approved May 16, 1901, and went into effect on the first Monday of September of that year.   The part of the act requiring interpretation in this case and on which the plaintiff relies to recover, is section 137, P. L. 212, 3 Purd. (13th ed.) 3307, and is as follows : " Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same." The plaintiff claims that the failure or neglect of the defendant bank to return the five checks in suit to the holder or the collecting bank within twenty-four hours after their delivery was a refusal to return the checks within the meaning of this section of the act, and that, therefore, the defendant must " be deemed to have accepted the same."   The defendant contends that the section of the law just quoted does not apply to a check presented to a drawee for payment ; that if it does, the " refusal " in the act means a tortious or wrongful refusal to return, amounting to a conversion of the check ; that there was no refusal by the defendant bank to return the checks, either express or implied ; and that the defendant bank did not hold the checks, but " promptly refused payment and passed each of them on to the notary public, the next person to receive a dishonored bill under the custom of banks."

The contention of the defendant that section 137 of the act does not apply to a check, presented to the drawee bank for payment, is answered adversely to its position by the act itself.   Section 185, P. L. 219, 3 Purd. (13th ed.) 3314, provides as follows : " A check is a bill of exchange drawn on a bank, payable on demand.   Except as herein othewise provided, the provisions of this act applicable to a bill of exchange, payable on demand, apply to a check."   No provision of the act has

been pointed out, and we know of none, making section 137 inapplicable to bank checks presented for payment. On the contrary, there is every reason why the section should apply, and the drawee should give prompt notice of acceptance or refusal. The reasons for such notice are pointed out in First National Bank of Northumberland v. McMichael, supra. The holder of a check is interested in knowing at the earliest time whether the drawer has sufficient funds in the bank for payment of the check, and especially should he be advised as promptly as possible if the drawer has no funds and the check is to be dishonored. Delay in furnishing this information may result in the loss of the amount of the check to the holder. We think it apparent that it is quite as important to have a check, payable on demand, returned promptly to the holder as to require the prompt return of an ordinary bill of exchange. As the act of 1901 abolishes implied acceptances of bills and checks and thereby changes the law as declared by this court, there is no protection for the holder against unreasonable detention of a check by the drawee bank if this section does not apply. We cannot assume that the legislature intended such results in the passage of the act.

If the section applies to the checks presented to the drawee bank in the case in hand, and this question will be considered and determined later, the act of the bank in delivering the checks to a notary public for protest was not a compliance with the section and did not relieve the drawee from liability. While protesting a bill of exchange or check is permissible, it is not mandatory under the negotiable instruments law, as section 118 specifically provides that " protest is not required except in the case of foreign bills of exchange," and section 152 declares that " where a bill does not appear on its face to be a foreign bill, protest thereof in case of dishonor is unnecessary." In view of the fact that the act declares a check to be a bill of exchange drawn on a bank, payable on demand, and that the provisions of the act apply to checks, protesting the checks for nonacceptance by the drawee bank in this case was wholly unnecessary and could in no way affect its liability on the checks under section 137 of the act.

We come now to the principal and controlling question in the case and that is, whether the failure to return the checks

to the holder or the collecting bank within twenty-four hours after their delivery to the defendant was a refusal to return the checks within the meaning of section 137 of the act, or did the act contemplate a tortious refusal to return, amounting to a conversion of the checks, as claimed by the defendant and as held by the court below ?

The drawee to whom a bill is delivered for acceptance is deemed or taken to have accepted it under this section of the act : (a) where he destroys it, (b) where he refuses within twenty-four hours after delivery to return the bill accepted or nonaccepted to the holder, and (c) where he refuses within such other period as the holder may allow to return the bill accepted or nonaccepted to the holder. When either of these conditions exists, the drawee becomes an acceptor of the bill and assumes liability as such. An implied or a verbal acceptance of a bill is abolished by the act, and there are now only two modes of accepting a bill : (1) By writing, signed by the drawee, as provided in section 132, and (2) by a nonreturn of the bill which is declared by the section under consideration to be the equivalent of an acceptance.

The manifest purpose in requiring the prompt return of the bill is in the interest of and for the protection of the holder. It is immaterial to the drawer when the bill is returned, as he is protected by notice of dishonor, and hence this section of the act, requiring prompt action in returning the bill, was obviously enacted for the benefit of the holder of the bill. The act declares in section 136 that twenty-four hours is sufficient time for the drawee to decide whether or not he will accept the bill, and the section under consideration, having allowed this time, it requires him to return the bill accepted or nonaccepted. If a demand and refusal are conditions precedent to an acceptance under this section, then the holder must not only present the bill for acceptance, but he must make a demand for its acceptance and await a specific refusal before the drawee is deemed an acceptor. This would certainly not be to the convenience or the interest of the holder, but in direct opposition to both. It would afford the holder less protection and would in effect prevent the return of the bill within twenty-four hours; or it would require the holder in transmitting the bill with instructions to present it for accept-

ance to send at the same time a demand for its acceptance. It is obvious that such demand accompanying a presentation of a bill for acceptance is wholly unnecessary, and certainly was not in contemplation of the legislature in enacting the section.

The presentation of a bill for acceptance is a demand for its acceptance which, if the bill is retained by the drawee, implies a demand for its return if acceptance is declined, in contemplation of the negotiable instruments law. The purpose of presenting a bill of exchange to the drawee is to require him to accept and assume liability for its payment, or to refuse its acceptance and thereby avoid liability. When the bill is presented, action by the drawee is, therefore, demanded of him, and he cannot remain silent and inactive without incurring the statutory penalty prescribed for such conduct. If he is permitted to retain the bill, he must return it accepted or not accepted at the expiration of twenty-four hours. If he accepts, he is required to do so in writing and must return the bill. If he refuses, he must return the bill not accepted. If he fails to do either— return it accepted or not accepted — he is "deemed to have accepted the bill" under this section of the act, and is liable thereon to the holder. It is apparent, we think, that in the enactment of this section of the statute, the legislature regarded the presentation for acceptance as a demand for an acceptance, which when the bill is retained by the drawee, implies a demand for its return within the time specified, and that, therefore, the neglect or failure to return is a refusal to return the bill. As said by this court in First National Bank of Northumberland v. McMichael, supra, if a bank does not pay or accept a check, it is bound to refuse it. And this is more clearly disclosed as the true interpretation of the word "refuses" in this connection, when we consider that the consequences to the holder of the nonreturn of the bill is the same whether it follows a demand, additional to the presentation for acceptance and a refusal, or simply a neglect or failure to return after the demand implied by its presentation for acceptance. If the section has in view the protection of the holder, as it manifestly has, then it was evidently the intention of the legislature that the nonreturn of the bill within the specified time, regardless of the cause, will make the drawee an acceptor.

The law merchant discourages laches in parties to negotiable paper, and demands prompt action in the performance of the duties imposed upon them. It was not the intention of the legislature in the enactment of the negotiable instruments law to abolish this rule, and to encourage delay or inaction in the holder or drawee of such paper. The intention of the section in question was to expedite action by the drawee in accepting or refusing a bill, presented and retained by him, and to fix a definite time, which had previously been uncertain, in which he should act on the bill. He is granted twenty-four hours after delivery, and not after a demand for a return of the bill, in which he must accept or decline to honor it. The time for returning the bill to the holder does not begin to run from the demand for its return, but from the date of its delivery. The drawee must, therefore, act within twenty-four hours from the date of the delivery of the bill, whether his action be an acceptance or a refusal. The section gives no other alternative and makes no other provision either for failure or neglect. Hence, action being required of the drawee, and one of the two alternatives being open to him, if he does not accept and return the bill, it will be deemed accepted if the bill by his default remains in his hands beyond the time limit. He refuses to return the bill in contemplation of the act when for any cause within the drawee's control it is not sent to the holder in the specified time. There can be no reason, and we will not assume that the legislature intended to do an unreasonable thing, why the law should make a distinction between the nonreturn of the bill by the refusal to return after a specific demand, and the failure or neglect to return after a demand implied by presenting the bill for acceptance. If such should be the proper interpretation of the section and a formal demand be necessary, then there is no provision in any part of the entire act imposing a penalty for the default or neglect of the drawee to return the bill, although the consequence of such act on the part of the drawee is as prejudicial to the holder as if a refusal to return the bill had followed a prior specific demand. There is, however, no such casus omissus in the act, but the enforcement of the return of the bill, accepted or nonaccepted, within the time designated, being the primal object of the section, the cause of its detention is

wholly immaterial, and cannot affect the drawee's liability as an acceptor.

The construction we place on section 137 is necessary to protect the holder of checks and other negotiable paper, it furnishes a complete statutory remedy for any default of the drawee in acting on the paper when retained by him, and does no violence to the language employed in the section. It carries out the obvious intent of the legislative mind in the enactment of the section, and establishes a fixed and certain rule to govern the drawee and the holder in the former's action on negotiable paper presented to and retained by him.

Our interpretation of the statute coincides with the legislative construction placed upon a similar statute in the state of Wisconsin. In enacting a negotiable instruments law, the legislature of that state added to a section of it similar to section 137 of our act a proviso " that the mere retention of the drawee will not amount to an acceptance." The logical inference is that the mere retention of the bill would be an acceptance within the meaning of the language of our statute which contains no such proviso.

It is not accurate to say, as suggested by the appellee, that under the negotiable instruments law a bill can only be accepted by writing, signed by the drawee. It is true that verbal and implied acceptances have been abolished by section 132, which provides that the acceptance must be in writing and signed by the drawee. But section 137, involved in this case, declares that the action of the drawee in destroying a bill or in not returning it, as required by the section, shall be deemed an acceptance of it. A constructive acceptance of a bill under this section is as effective to charge the drawee as an acceptance in writing under section 132. Nor do the two sections in any way conflict. The former section requires affirmative action on the part of the drawee by assuming liability by a writing, the latter section declares his liability if he destroys the bill, or if by inaction he retain the bill beyond the specified time. An acceptance under either section obligates the drawee to pay the bill.

In the state of New York, a negotiable instruments law has been enacted, and a section similar to section 137 of our act is included in the statute. The supreme court of that

state in State Bank v. Weiss, 91 N. Y. Supp. 276, has construed this section of the statute in conformity with the meaning we have given our own act. The case was decided in 1904 and it does not appear to have been carried to the court of appeals of the state. It was an action on a check drawn on a branch bank of the plaintiff and was paid by plaintiff by the allowance of a credit at the clearing house. It was afterwards discovered that the drawer had had no funds in the bank, and this suit was brought to recover from the indorsers six days later. It was held there could be no recovery; that a check was a bill of exchange, payable on demand; and that under the negotiable instruments law a drawee will be deemed to have accepted a bill when he does not return it within twenty-four hours after its delivery for acceptance.

Matteson v. Moulton, 79 N. Y. 627, relied upon by the court below and the appellee here, was decided by the court of appeals in 1880, and the syllabus of the case states that the court held that "refusal" in the New York statute is "an affirmative act, or is made up of conduct tantamount to one (and) it is also a willful or wrongful act." But the facts of the case did not require the court to determine whether the failure or neglect to return the bill within twenty-four hours was a refusal to return it within the meaning of the act. The bill was sent to the office of the defendant who retained it for three or four months with the consent of the plaintiff, and under a promise to pay, relied on by the plaintiff. It will, therefore, be observed that the facts of the case did not require the court to determine whether the mere retention of a bill of exchange for twenty-four hours after its delivery to the drawee would constitute an acceptance. Again : if the case is still authority in that state for an interpretation of the act, it is singular that it is not cited or referred to in the very recent case of State Bank v. Weiss, supra, in which the court gave an interpretation of the same section of the negotiable instruments law of that state diametrically opposite to the construction of the act announced in the Matteson case.

In construing similar acts, the supreme courts of Arkansas and Missouri seem to have held that a nonreturn of the bill was not a refusal in the absence of a demand or proof that the drawee had refused to return the bill. The learned coun-

sel for the appellee also cites in support of this construction of the act, Westberg v. Chicago Lumber & Coal Co., 117 Wis. 589. But this case is not authority for the proposition. The learned justice who delivered the able, if not convincing, opinion in the case, discussed the question and arrived at that conclusion, but the instrument sued on was a nonnegotiable bill of exchange, and hence the question was not involved in the case. This is conceded by the learned judge in closing his opinion, reversing and remanding the case for new trial, wherein he said (p. 595) : " It seems clear from the title that the codifying law of 1899 is intended to regulate only negotiable instruments. It, therefore, does not affect or control the rights of the parties upon this paper."

We are of the opinion that under section 137 of the negotiable instruments law of this state, that the failure or neglect of a drawee to whom a bill is delivered for acceptance to return the bill, accepted or nonaccepted, to the holder within twenty-four hours after delivery, makes the drawee an acceptor of the bill. It, therefore, follows in the case in hand that the defendant bank, having failed to return the five checks to the collecting bank, within twenty-four hours after their delivery to the drawee, that the latter must be deemed to have accepted the checks, and is, therefore, liable to the plaintiff for the amount of them.

The judgment non obstante veredicto in favor of the defendant is reversed, and judgment is now directed to be entered by the court below on the verdict in favor of the plaintiff and against the defendant.