## AMERICAN NAT. BANK et al. v. NATIONAL BANK OF CLAREMORE.

No. 16753—Opinion Filed June 8, 1926.

Rehearing Denied Oct. 5, 1926.

### 1. Statutory Provision.

Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and indorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff. Section 222, C. S. 1921.

### 2. Venue—Action by Collecting Bank to Recover Amount Advanced on Draft not Paid—Drawer as Party.

Where the action is rightly brought in any county, a summons shall be issued to any other county against any one or more of the defendants, at the plaintiff's request. (Section 234, C. S. 1921.) The drawer of a draft, who deposits same for collection and receives the amount thereof in cash or its equivalent, the draft not being paid by the drawee, though legally accepted, is a proper and necessary party to an action to determine the rights of the collecting bank, and the action is properly brought in the county of the drawer's residence.

### 3. Bills and Notes—Acceptance of Draft by Refusal of Drawee to Return in Allotted Time.

Under section 7807, C. S. 1921, the refusal of a drawee to whom a draft is delivered for acceptance to return the same within 24 hours after such delivery, or within such other period as the holder may allow to return the draft, accepted or nonaccepted, makes the drawee an acceptor of the draft.

### 4. Same—Failure to Return Draft Construed as "Refusal."

The word "refuses" in the act does not mean tortious refusal, nor does it imply that a previous demand for the return of the draft to the holder shall be made. The word is to be construed so as to cover a failure or neglect to return the draft.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Rogers County; C. H. Baskin, Judge.

Action by the National Bank of Claremore against W. E. Hornaday, H. A. Ledbetter, and the Guaranty State Bank. Judgment for H. A. Ledbetter and against W. E. Hornaday and the American National Bank, suc-cessor of Guaranty State Bank. American National Bank brings error, and the plaintiff, National Bank of Claremore, appeals from that part of the judgment rendered in favor of the defendant H. A. Ledbetter. Affirmed.

Ledbetter & Ledbetter, and Holtzendorff & Holtzendorff, for plaintiffs in error.

Richard H. Wills, L. S. Robson, and Wayne W. Bayless, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, National Bank of Claremore, as plaintiff, instituted this action in the district court of Rogers county against the Guaranty State Bank of Ardmore, predecessor of the plaintiff in error, American National Bank of Ardmore, W. E. Hornaday, and H. A. Ledbetter, as defendants, to recover the sum of $1,000, alleged to be due the plaintiff, National Bank of Claremore. The parties will be referred to as they appeared in the trial court.

The cause came on for trial on the 7th day of March, 1925, and at the conclusion thereof judgment was rendered in favor of the plaintiff and against the defendants W. E. Hornaday and American National Bank and each of them, and judgment was also rendered in favor of the defendant H. A. Ledbetter, sustaining his demurrer to plaintiff's evidence.

The American National Bank filed its motion for a new trial, and the plaintiff, National Bank of Claremore, also filed a motion for a new trial, in so far as it and the defendant, H. A. Ledbetter, were concerned, and upon the overruling of said motions for a new trial, the defendant American National Bank prosecuted this appeal to this court, and the plaintiff filed its cross-appeal.

The record discloses that a summons was issued and service had on the defendant W. E. Hornaday in Rogers county, and service of summons was had upon the defendants Guaranty State Bank of Ardmore and H. A. Ledbetter, in Carter county. A motion to quash the summons was filed, which was sustained by the court.

An amended petition was filed by leave of the court, and an alias summons was issued and service had on W. E. Hornaday in Rogers county and service on the Guaranty State Bank and H. A. Ledbetter was had in Ardmore, Carter county. There was a motion filed to quash the alias summons as to the defendants Guaranty State Bank of Ardmore and H. A. Ledbetter. This motion was overruled.

150     119 OKLAHOMA REPORTS

On the 17th day of December, 1919, the defendants H. A. Ledbetter and the Guaranty State Bank filed a demurrer to the plaintiff's amended petition, and at said time the defendant W. E. Hornaday was permitted to refile his demurrer to plaintiff's amended petition, which had been overruled on the 6th day of December, 1919. Upon the conclusion of the hearing upon said demurrers, the trial court overruled the same and gave each of the defendants 30 days within which to file an answer.

Separate answers were filed by the defendants H. A. Ledbetter and the Guaranty State Bank, and thereafter the plaintiff filed its reply to said answers. After the overruling of his demurrer to the plaintiff's amended petition, the defendant W. E. Hornaday filed no further pleadings in the case, and upon the trial of the cause he was adjudged in default, and judgment was rendered against him.

On the 26th day of June, 1922, the trial court made an order authorizing the filing of plaintiff's amendment and supplement, making the American National Bank a party defendant to the action.

The evidence discloses that on the 23rd or 24th day of October, 1917, the defendant W. E. Hornaday had come in contact with one Frank Johnson, who held certain oil and gas leases on 490 acres of land, which leases the defendant H. A. Ledbetter desired to purchase, and for which he had agreed to pay $1,000. The defendant Hornaday called at the place of business of the plaintiff at Claremore, Rogers county, and inquired of its cashier whether the plaintiff bank would pay a draft in the sum of $1,000 to be drawn by him upon the defendant H. A. Ledbetter for some leases he was buying for Mr. Ledbetter or with him. Thereupon the cashier of the plaintiff bank advised the defendant W. E. Hornaday that the plaintiff would cash such a draft provided some bank at Ardmore agreed to pay the same. Thereafter, on the 24th day of October, 1917, a telegram was prepared by the defendant W. E. Hornaday, signed by the plaintiff, and forwarded by it to the defendant Guaranty State Bank, and in said telegram the plaintiff inquired whether said defendant Guaranty State Bank would pay a draft of $1,000, drawn by the defendant W. E. Hornaday upon it, the said Guaranty State Bank, and the defendant H. A. Ledbetter, provided there accompanied said draft assignments from Frank Johnson of oil and gas mining leases covering the said 490 acres, and also a certificate of the Johnston Abstract &

Loan Company of Claremore to the effect that the oil and gas mining rights under the said leases were vested in the said Frank Johnson.

Thereafter, on the said 24th day of October, 1917, the defendant Guaranty State Bank received the said telegram, and submitted the same to the defendant H. A. Ledbetter. Thereafter, on the said 24th day of October, 1917, upon the advice of the defendant H. A. Ledbetter, the defendant Guaranty State Bank prepared, signed, and forwarded to the plaintiff a certain telegram, in which it stated that it, the Guaranty State Bank, would pay a draft of $1,000 drawn by the defendant W. E. Hornaday on the defendant H. A. Ledbetter, provided there accompanied said draft assignments to the said defendant H. A. Ledbetter of oil and gas mining leases covering the said 490 acres, and abstracts showing clear title to said leases, and provided two days' time was given for examination of said abstracts.

The plaintiff received the telegram of the defendant Guaranty State Bank on the 24th day of October, 1917, and on the same day the plaintiff forwarded to the defendant Guaranty State Bank a two-day sight draft for $1,000 drawn by the defendant W. E. Hornaday upon the defendant H. A. Ledbetter, and payable to the plaintiff, together with seven leases covering the said 490 acres and seven assignments thereof from Frank Johnson, the lessee in said leases, and seven pencil reports or certificates of the Johnston Abstract & Loan Company with reference to the condition of the title to said leases.

On the said 24th day of October, 1917, upon the execution and delivery of said draft by the defendant W. E. Hornaday to the plaintiff, the plaintiff gave said defendant Hornaday a deposit credit upon its books for the sum of $1,000. On the 25th day of October, 1917, the defendant Hornaday executed two certain checks upon the plaintiff, one in favor of Frank Johnson for the sum of $490, and the other payable to himself in the sum of $510. These checks were presented to the plaintiff, and on the 25th day of October, 1917, the plaintiff paid the same, which exhausted the credit deposit of $1,000.

The defendant Guaranty State Bank received the said draft, leases, assignments, and pencil reports, or certificates on the 26th day of October, 1917, and presented the same to the defendant H. A. Ledbetter, who at once advised the said defendant Guaranty State Bank that there were no abstracts attached to the draft, and that the plaintiff

had not sufficiently complied with the terms and conditions of the telegram of the defendant Guaranty State Bank to the plaintiff of October 24, 1917, and that he, the defendant Ledbetter, would not accept and pay the said draft.

The evidence further discloses that the Guaranty State Bank did not notify the plaintiff of any objection to the said draft or of any failure to more fully comply with the terms, conditions, and provisions of said telegram of October, 24, 1917, from the defendant Guaranty State Bank to the plaintiff, and wholly failed to notify the plaintiff of the acceptance or nonacceptance of the said draft until November 15, 1917, and then not until the plaintiff had written the defendant Guaranty State Bank. inquiring why said draft had not been paid. On the 14th day of November, 1917, the plaintiff wrote the defendant Guaranty State Bank, inquiring why the said draft had not been paid, and in reply thereto, on November 15, 1917, the defendant Guaranty State Bank replied by letter, in which it stated, among other things:

"There was no abstract attached to this draft, only a portion of the papers being sent. namely: leases and assignments and certificates of abstract, the assignments not having the name of H. A. Ledbetter filled in on the same"

—and because of the plaintiff's failure to more fully comply with the conditions of the said telegram of October 24, 1917, the letter stated that it had not and would not pay the aforesaid draft. In the said letter of the defendant Guaranty State Bank to the plaintiff of November 15, 1917, the Guaranty State Bank returned to the plaintiff the draft, leases, assignments, and pencil reports of certificates.

Thereafter, on November 19, 1917, the plaintiff returned said draft, leases, assignments. and pencil reports or certificates, together with a letter to the defendant Guaranty State Bank, in which letter the plaintiff stated, among other things:

"We must insist upon payment of this draft, together with interest at 8 per cent. from October 24. * * * We supposed the item was paid until you returned it on November 15."

It appears that the draft in question had, in some way, been lost or misplaced, but the testimony of the plaintiff was that the last time said draft and the above mentioned leases. assignments, and pencil reports, or certificates, were sent to the defendant Guaranty State Bank, the same were never returned.

It is contended by the defendant American National Bank, successor of the Guaranty State Bank, that the plaintiff's cause of action against the defendant W. E. Hornaday is one for money had and received, and that plaintiff's cause of action against the other defendants is for damages for breach of contract.

It is, we think, apparent that the instant action was commenced and prosecuted for the single purpose of establishing the liability of the defendants upon the draft in question, the defendant W. E. Hornaday. as drawer of the draft, and the other defendants as implied acceptors of said draft, and while in a certain sense the causes of action against the several defendants are separate and distinct, it was permissible for the plaintiff to join several causes of action and said defendants in one action.

Section 222, C. S. 1921, provides:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and indorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff."

In the case of Chowning v. First State Bank of Tuskahoma, 102 Okla. 4, 225 Pac. 715, this court held:

"Under section 222, Comp. Stat. 1921, the maker of an obligation and a limited indorser or guarantor may be sued in the same action."

In the opinion in the above case it was said:

"This section has been construed and applied in Equitable Surety Co. v. Sapp, 77 Okla. 221, 187 Pac. 917; Fidelity & Deposit Co. of Maryland v. Sherman Machine & Iron Works, 62 Okla. 29, 161 Pac. 793: Palmer v. Noe, 48 Okla. 450, 150 Pac. 462: Ferrero v. State, 64 Okla. 44, 166 Pac. 101."

In 8 C. J. 852, it is said:

"By statute in many of the United States, in England, and in Canada, the holder of a bill or a note may bring suit against the drawer or maker, the acceptor or indorser, any or all, in the same action."

In the case of Hendrix et al. v. Fuller, 7 Kan. 331, Judge Brewer said in the opinion:

"Without considering what would be the rule independent of the statute, we think section 39 of the Civil Code determines the question: 'Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and indorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff'."

The exact question presented by the defendant American National Bank was involved in the case of Steele v. Hudson, 30 Okla. 518, 120 Pac. 616, where it was held:

"When the maker of such a note is sued in a county in which such indorser resides, but in which the maker does not reside, and where such indorser makes no defense, but permits judgment by default to be taken against him, it is not error for the court to overrule a motion by the maker of the note to set aside the service upon him, because he is not a resident of the county and was not served therein."

The record discloses that the defendant W. E. Hornaday was personally served in Rogers county, Okla., where this action was instituted, and appeared in the action and raised no objection to the jurisdiction of the court, but entered a general appearance, and on the trial of the case judgment was rendered against him. In view of this fact we think it clear the plaintiff, by virtue of section 234, C. S. 1921, which reads as follows:

"Where the action is rightly brought in any county, a summons shall be issued to any other county against any one or more of the defendants, at the plaintiff's request"

—was entitled to have summons issued to Carter county for service upon the defendants H. A. Ledbetter and the Guaranty State Bank.

Counsel for the defendant American National Bank has called to our attention the recent case of Oklahoma State Bank of Ada v. Reed et al., opinion filed April 20, 1926. 121 Okla. ——, 247 Pac. 402, which case, it is said, is decisive upon the question of the jurisdiction of the district court of Rogers county. In the opinion in the cited case Branson, V. C. J., says:

"There was no authority of law for bringing the defendant Reed into the district court of Pontotoc county, when he was a resident of Grady county, in a suit on a promissory note, where no other defendant named in the action was either a maker or an indorser or a guarantor on the same."

In the second paragraph of the syllabus of the cited case, it is held:

"A summons can be issued to another county only where the action is rightly brought in a court of a county other than the one to which summons is directed."

In the view we take of the instant case, that the action was rightly brought in Rogers county, it will therefore be seen that the cited case has no application to the facts of the instant case.

The defendant American National Bank further contends that there was no abstracts attached to the draft; that it was a condition precedent to the right of recovery of the National Bank of Claremore that the conditions in the telegram sent by the defendant bank at Ardmore must be complied with before the defendant bank would become liable to the plaintiff bank. Numerous authorities are cited in support of this proposition. These authorities, however, go to the proposition that where a party promises to pay a certain sum upon the performance of certain conditions, the performance of such conditions is prerequisite to the establishment of any liability against such party. This is, without question, the general rule. There is nothing, however, in any of the authorities cited which controverts the proposition that a party cannot either expressly or impliedly waive a substantial performance of conditions which he has himself prescribed as prerequisite to his payment of money to another party.

Within two days after the receipt of the draft involved herein, together with the leases, assignments, and certificates, or pencil reports of abstract, which accompanied said draft, the defendant Guaranty State Bank had a perfect right, under the terms and conditions of its telegram of October 24, 1917, to notify the plaintiff that, for the reason that the said assignments did not contain the name of the defendant H. A. Ledbetter, and for the further reason that no abstract of title showing clear title in and to the said oil and gas leases had been submitted to it, it would not pay the draft involved herein; but it gave no such notice.

The plaintiff bank was therefore justified in assuming that it, the said plaintiff bank, had complied with the terms and conditions of the telegram of October 24, 1917, to the satisfaction of the defendant Guaranty State Bank. If the defendant bank intended to insist upon a more strict compliance with the terms and conditions set forth in its said telegram, we think it was bound to so notify the plaintiff within two days after the receipt of the draft and other instruments, or at least within a reasonable time thereafter, in order that the plaintiff bank might pursue such further remedies as were open to it. The defendant Guaranty State Bank, on the contrary, kept said draft and other instruments without paying or notifying the plaintiff bank until November 15, 1917, when, in answer to an inquiry of the plaintiff bank as to why the draft had not been paid, it, for the first time, stated that it would not pay the draft because the plain-

tiff had not strictly complied with the terms and conditions of the telegram of October 24, 1917.

The principal proposition presented by the defendant American National Bank is that the retention of the draft by the bank at Ardmore beyond the time limit authorized did not give rise to a cause of action in favor of the bank at Claremore as against the Guaranty State Bank at Ardmore.

Section 7806, C. S. 1921, reads as follows:

"The drawee is allowed 24 hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation."

Section 7807, C. S. 1921, reads as follows:

"Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within 24 hours after such delivery, or within such other period as the holder may allow, to return the bill, accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

The defendant American National Bank contends that the consensus of authority is to the effect that under the common law, and under statutes identical with or similar to those above quoted, the mere failure of a party to whom a draft is presented for acceptance and payment, to return same within 24 hours, or such other time as may be allowed for acceptance and payment with notice of nonacceptance, will not amount to an implied acceptance, but that in order to establish such liability it is necessary that there be a demand for the return of the draft and a refusal to comply therewith, or, in other words, a tortious refusal to return the draft.

Some authorities cited by the defendant bank apparently sustain this proposition, but we think the great weight of authority and the better reasoning support the rule that under statutes such as those above quoted, the failure or negligence of a person to whom a draft is presented for acceptance and payment, to return the same with notice of nonacceptance within 24 hours after the presentation of the same, or within such further time as may be allowed for acceptance and payment, amounts to an implied acceptance of such draft, and such persons thereby become absolutely liable to pay the same. Wisner v. First Nat. Bank of Gallitzin, 220 Pa. 21, 68 Atl. 955, 17 L. R. A. (N. S.) 1266; Standard Trust Co. v. Commercial Nat. Bank (N. C.) 81 S. E. 1074; Commercial State Bank v. Harkrider-Keith-Cooke Co. (Tex. Civ. App.) 250 S. W. 1069;

8 C. J. 306, sec. 482; Provident Securities, etc., v. First Nat. Bank of Gallitzin, 37 Pa. Super. 17; and State Bank v. Weiss, 91 N. Y. Supp. 276.

In the case of Commercial State Bank v. Harkrider-Keith-Cooke Co., 250 S. W. 1069, the Court of Civil Appeals of Texas, after referring to authorities which it was claimed supported the rule contended for by the defendant bank in the instant case, uses the following language:

"In other authorities we have consulted we find that one or more of the states, in adopting the Negotiable Instruments Act, especially provided that a mere retention of a negotiable instrument by the payee will not amount to an acceptance, but we have no such limitation in the statutes as adopted by our Legislature. In some cases the statutes relating to the subject are not given, so that it has been difficult to determine the weight that should be given some of the discussions and authorities supporting appellant's propositions."

The court then goes on to say:

"We have finally concluded that the case of Wisner v. First Nat. Bank of Gallitzin, 220 Pa. 21, 68 Atl. 955, 17 L. R. A. (N. S.) 1266, by the Supreme Court of Pennsylvania, is more nearly in point, and more satisfactory in its reasoning and conclusions than any other authority we have been able to find."

In the Wisner v. First Nat. Bank Case, supra, a leading case on this subject, the holder of certain checks brought suit against the defendant, the bank on which the same were drawn, on the ground that said checks were presented to said defendant for acceptance, and that said defendant had impliedly accepted said checks by its refusal to return them within 24 hours after they were received as required by the Negotiable Instruments Law of Pennsylvania. which contained provisions identical with those quoted above from the Oklahoma Negotiable Instruments Law.

The defendant claimed that it was relieved from liability on said checks, because it had refused to accept them, and had, on the day of their receipt, delivered them to a notary public for protest and dishonor.

The trial court, in its opinion entering judgment for the defendant, held that under the Negotiable Instruments Law, it was necessary for the holder, in order to recover against the drawee bank, to prove a conversion of the checks, and that the mere retention of them for more than 24 hours, without demand for their return, is not a refusal within the meaning of the statute.

# 154

# 119 OKLAHOMA REPORTS

Thereupon, the plaintiff appealed the case to the Supreme Court of Pennsylvania, which reversed the judgment of the trial court. In the opinion it is said:

"We come now to the principal and controlling question in the case, and that is, whether the failure to return the checks to the holder or the collecting bank within 24 hours after their delivery to the defendant was a refusal to return the checks within the meaning of section 137 of the act, or did the act contemplate a tortious refusal to return, amounting to a conversion of the checks as claimed by the defendant and as held by the court below? The drawee to whom a bill is delivered for acceptance is deemed or taken to have accepted it under this section of the act: (a) Where he destroys it, (b) where he refuses within 24 hours after delivery to return the bill accepted or nonaccepted to the holder, and (c) where he refuses within such other period as the holder may allow to return the bill accepted or nonaccepted to the holder. When either of these conditions exists, the drawee becomes an acceptor of the bill and assumes liability as such. An implied or a verbal acceptance of a bill is abolished by the act, and there are now only two modes of accepting a bill: (1) By writing, signed by the drawee, as provided in section 132, and (2) by a nonreturn of the bill, which is declared by the section under consideration to be the equivalent of an acceptance."

We are of the opinion that under section 7807, supra, of the Negotiable Instruments Act of this state, the failure or neglect of a drawee to whom a bill is delivered for acceptance to return the bill accepted or not accepted within 24 hours after such delivery, or within such other period as the holder may allow, makes the drawee an acceptor of the same. It follows in the instant case that the defendant bank having failed to return the draft to the plaintiff bank within 24 hours after its delivery to the drawee, or within the further period of time allowed by the holder to the drawee, the defendant bank must be deemed to have accepted the draft, and is therefore liable to the plaintiff bank for the amount thereof.

As to the proposition presented by counsel for the plaintiff bank in its cross-appeal, to the effect that the trial court erred in rendering judgment in favor of the defendant H. A. Ledbetter and against the plaintiff, we think it sufficient to say that the defendant H. A. Ledbetter, on the 26th day of October, 1917, at the time the defendant Guaranty State Bank received the draft in question, together with the leases, assignments, and pencil reports, or certificates which accompanied the same, immediately advised the defendant Guaranty State Bank

that the plaintiff bank had not sufficiently complied with the terms and conditions of the telegram of the defendant Guaranty State Bank to the plaintiff of October 24, 1917, and that therefore he would not accept and pay the said draft.

Upon this state of facts the trial court rendered judgment in favor of the defendant H. A. Ledbetter.

We conclude upon an examination of the entire record, that the final judgment of the trial court that the plaintiff have and recover nothing as against the defendant H. A. Ledbetter, and that the plaintiff have and recover against the defendants W. E. Hornaday and the American National Bank, and each of them, the sum of $1,000, together with interest, is correct, and should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 8 C. J. p. 852 § 1113; 30 Cyc. p. 121. (2) 8 C. J. p. 819 § 1080; p. 855 § 1115 (Anno). (3) 8 C. J. p. 306 § 482; p. 318, § 487. (4) 8 C. J. p. 318 § 487. See under (3, 4) anno. 17 L. R. A. (N. S.) 1266; 3 R. C. L. p. 1308; 1 R. C. L. Supp. p. 1026.